RHODES v. SOUTHERN RY.

1. CONTINUANCE—DISCRETION.—No abuse of discretion under facts here in refusing motion of continuance because of sickness of chief counsel, there being other counsel of record in Court, who tried the case.

2. JURY.—Preparation of jury lists by clerk of board of county commissioners at instance of board of jury commissioners, which was judicially passed on by the board; placing jury list in clerk's office outside of jury box, when the jury commissioners and the clerk were under the impression the list was in the box; and having two lists instead of one, are mere irregularities, and are not sufficient grounds for quashing the array.

3. JURY—APPEAL—SUPERSEDEAS.—Order refusing to quash the array of jurors on grounds held to be mere irregularities, is not appealable, and appeal therefrom does not act as a supersedeas.

4. EVIDENCE—TRANSACTIONS WITH DECEDENT.—CONVERSATION between defendant and deceased, in action by administratrix, as to the deceased being informed as to the contents of certain bulletins, is prohibited under sec. 400 of the Code.

5. FELLOW-SERVANTS.—CONDUCTOR and employees under his control do not sustain to each other the relation of fellow-servants.

Before J. E. McDONALD, special Judge, Barnwell, May, 1903.   Affirmed.

Action by Lizzie D. Rhodes, administratrix of George T. Rhodes, against Southern Railway Co. and P. I. Welles. From judgment for plaintiff, defendant appeals.

*Messrs. B. L. Abney, Jos. W. Barnwell* and *Robt. Aldrich,* for appellants, cite: *As. to refusing motion for continuance on account of sickness of one counsel:* 42 S. C., 209; 48 S. C., 45; 50 S. C., 403; 1 McL., 520.   *As to refusal to quash array of jurors:* Act of 1731, vol. 3, sec. 29; 12 Ency. P. & P., 288; 11 S. C., 345; Acts 1902, 1066; 15 Rich. Eq., 42.   *As to appeal from order refusing to quash array of jurors being supersedeas:* Code of Proc., secs. 345, 356. *As to excluding conversations between defendant and deceased:* 60 S. C., 401; 33 S. C., 556; Rev. Stat. 1893, sec. 3515; 37 S. C., 42; 65 S. C., 260.   *As to refusal to charge request of risks by fellow-servants, because not pleaded:* 13 Ency. P. & P., 14; 66 S. C., 204; 61 S. C., 478; 51 S. C., 79; 40 S. C., 104; 39 S. C., 507; 66 Fed. R., 931; 63 Ia., 562; 90 Ia., 85; 84 Ind., 50; 17 Wash., 582; 63 S. C., 559; 1 McM., 385.

*Messrs Bates & Simms,* contra, cite: *As to refusal of motion for continuance:* 50 S. C., 403; 42 S. C., 209; 48 S. C., 15.   *As to the validity of the jury lists:* 37 S. C., 419, 174; 58 S. C., 1; Act of 1902, 1066; 34 S. C., 17; 23 Ency., 153; 2 Hill, 379; Thomp. & Merriman on Juries, 134.   *As to notice of appeal from order refusing to quash array of jurors acting as supersedeas:* Code of Proc., 356, 326.   *As to conversation between deceased and defendant:* 60 S. C., 413.   *As to assumption of risk of negligence of co-employee:* 1 McM., 385; 32 S. C., 301; 61 S. C., 480.

April 20, 1904.   The opinion of the Court was delivered by

MR. JUSTICE GARY. This is an action for damages based upon the alleged negligence of the defendants.

In the first paragraph of the complaint it is alleged that the Southern Railway Co. is a corporation operating a railroad from Batesburg, S. C., to Hardeeville, S. C., and that the defendant, P. I. Welles, is the superintendent of his codefendant, and as such was in charge of said railroad in behalf of the Southern Railway Co.

The second and third paragraphs of the complaint are as follows:

"II. That upon the 26th day of August, A. D. 1901, one George T. Rhodes was and had been engaged and employed by said defendant as a conductor of the said defendant, and in charge of one of the freight trains operating between said points as aforesaid; and being so engaged and employed, upon said day and in discharge of his duties as such conductor on said train, and whilst at the station of Salley's, undertook, in pursuance of his said duties, to have the freight destined for said place unloaded thereat; among which freight was a cotton gin of considerable size and weight. And the said defendants had only provided for the purpose of unloading said freight certain skids, consisting of two in number, which were extended from the freight car as aforesaid, to the platform at said station of Salley's, and which said skids were under the charge of the defendants' depot agent at said place, and upon these skids the train hands on said train were compelled to attempt to unload said gin in said way.

"III. That whilst in the midst of unloading said cotton gin, the same careened and toppled over to the ground, and while so doing struck the said George T. Rhodes, who, in discharge of his duty, was standing by, and fatally wounded him; and the plaintiff avers that the cause of said careening and falling of said gin was that the defendants had not furnished proper appliances for the unloading and loading of the freight of said character, and that the skids were not of the same size and thickness; but, on the contrary, one was

thinner than the other; and when the heavy gin above described was attempted to be unloaded upon said skids of uneven thickness, the weight of the said gin on the side of the thinnest skid made said skid give more than its companion, which said giving and the gin not, therefore, upon the same level, caused the said gin to careen and topple over, and the said defendants, not having also provided sufficient help by way of hands and laborers to unload said gin, were unable thereby to prevent the result stated, or to obviate the same by making up in physical help what was lacking in such defective appliances aforesaid."

The other allegations are formal.

The answer of the defendants denied the material averments of the complaint, and set up the defense of contributory negligence.

The jury rendered a verdict in favor of the plaintiff for $10,000.

The defendants appealed, and their first exception is as follows: "Because it is respectfully submitted that his Honor, the special Judge, erred in forcing, and that it was an abuse of his discretion to force, the case to trial, in spite of the illness of the defendants' counsel in charge of the case, and in spite of the declaration of the counsel who was forced to try the case that he had no opportunity to prepare for the trial of the same."

The action was commenced in September, 1902, but was not reached on the docket at the fall term of that year. At a special term, held in December of the same year, the case was heard, but the result was a mistrial. No civil cases were tried at the following March term, and a special term was requested by the Barnwell bar in April, 1903. A roster was arranged by the bar for this special term, and this case, amongst others, was set for trial at that term. On the 22d day of April, 1903, Mr. Barnwell, the leading counsel for the defendants, wrote to the plaintiff's attorneys, requesting a continuance of the case, on account of his inability to attend the Court by reason of the necessity for a surgical

operation on his leg, which confined him in the hospital for a number of weeks. The plaintiff's attorneys did not see their way clear to grant his request.

His Honor stated the following reasons for refusing the motion for a continuance of the case: "Well, gentlemen, the whole matter rests very strongly on my sympathy, and I regret very much that Col. Barnwell is ill and has undergone an operation, and if I conceived it my duty, I would consider it a pleasant duty to grant his request. Two weeks ago the same motion was made. At that time I stated that ample time would be given to prepare for counsel, if Col. Barnwell could not be present. I don't think the case of *Varn* v. *Green* applies, because both of the counsel were ill and incapacitated. Here the illness was in contemplation of counsel for some time previous to his going to the hospital; and there were other counsel upon the record in the cause, one of whom, Col. Aldrich, had already taken part in the trial of this case at a preceding term and, therefore, familiar with the case. Two weeks has been given the counsel to procure the papers and to get ready for trial, and, therefore, under all of the circumstances of this case, I do not think the case to be one where it would be a proper exercise of my discretion to grant the motion."

The duty which was devolved upon his Honor, the presiding Judge, of deciding the motion for a continuance, was of great delicacy. Ordinarily an order refusing such motion is not appealable. An appeal lies only when there has been an abuse of discretion. The reasons assigned by the presiding Judge, in refusing the motion, satisfy this Court that there was no abuse of discretion.

The second exception is as follows: "Because, it is respectfully submitted, that his Honor erred in refusing to quash the panel of jurors upon the following grounds: (a) That the jury list of 'qualified electors' was not prepared by the county auditor, the county treasurer, and the clerk of the Court of Common Pleas in Barnwell County, where said case was tried, as is required by

law, but by the board of county commissioners and the clerk of the board of county commissioners, and that subsequent adoption and ratification of the acts of the said board of county commissioners and clerk, by the said county auditor, county treasurer, and clerk of the Court of Common Pleas, did not cure such illegal preparation of said list.    (b)  That the jury list required by law to be deposited with the ballots in the jury box, was not so deposited, but was found outside of the said box unenclosed, in the office of the clerk of said Court.    (c)  That what purported to be said jury list, when found, did not consist of one list but of two jury lists.    (d) That the said jury lists were made out from the list of taxpayers and not from the qualified electors, as required by law."

We will first consider subdivision "a."    The plaintiff introduced in evidence the affidavit of the county auditor, county treasurer and clerk of the Court, in which they stated: "That each of said commissioners being exceedingly busy with the manifold duties in their respective offices, at their own expense, employed R. C. Roberts, Jr., the clerk of the county supervisor, to make a list of the qualified electors of said county, under the provisions of the Constitution, between the ages of twenty-one and sixty-five years, and of good moral character, and to furnish to the said commissioners for their action the said list, which was duly done by the said clerk.    That upon the said names being furnished to the said commissioners by the said clerk, the said commissioners inspected the same and passed upon the qualifications of the persons whose names appear upon the said list; and the said board, upon the said investigation, judicially found that the said names included not less than one from every three of such qualified electors, under the provisions of said Constitution, and as far as their judgment advised, such parties are of good moral character and between the ages of twenty-one and sixty-five years, and living within the said county of Barnwell; and that the same, in the judgment of the said deponents, are all otherwise well qualified to serve

as jurors, being persons, in their opinion, of sound judgment and free from all legal exceptions. That throughout the whole transaction the said R. C. Roberts, Jr., exercised none of the functions of this board; but only acted in pursuance of his employment as a clerk in the preparation of the lists of said qualified electors, and in no manner desired, nor did he usurp, any of the prerogatives of the said board, or relieve the said board of any of their liabilities or responsibilities to the public, under the law with reference to the drawing of said jurors. That the said board itself judicially passed upon the qualifications, as aforesaid, of each of the said electors, and their names were only placed in the jury box after their said fitness had been so determined. That upon the list of jurors so selected being accepted by the said board, they caused the names of the electors so accepted to be written, each on a separate paper or ballot, so as to resemble each other as much as possible, and so folded that the names written thereon, in their judgment, were not visible on the outside, and placed them with the said list in the regular jury box. * * * And in all other particulars the said jury box has been kept securely locked with three separate and strong locks with keys, etc., as required by law; and that at the same time the said deponents placed in a special apartment in the said jury box, known as the "Tales' box, the names of not less than one hundred nor more than four hundred of such persons whose names appeared on the said lists as reside within five miles of the court house, and the names of such persons were likewise placed in the said jury box."

The fact that the clerk of the board of county commissioners prepared a list of the electors from the tax books, *which was canvassed and revised by the proper officers,* was a mere irregularity, and, therefore, an insufficient ground for quashing the array of jurors. In the case of *State* v. *Massey,* 2 Hill, 379, the defendant appealed upon the ground that the jury list had not been made from the tax returns according to the act of 1799. After citing the provisions of

the act, the Court used this language: "This is purely direc-tory to public officers in the discharge of their duty; if they fail to discharge it, and the jury is drawn from the old list, it does not vitiate the array, nor is it any objection to the polls. The jurors are still *boni et legales homines.* 2 Hawk P. C., book 2, ch. 43, sec. 14. The party is not prejudiced if the jury for his trial are from the vicinage, the district where the offense is committed, and have all the other legal qualifi-cations. It will be observed that the act does not declare a venire issued for jurors drawn from the old list to be void; nor does it direct the array to be quashed. It was not in-tended to secure any right, benefit or privilege to the defend-ant; it was merely to regulate the drawing of the jury in such a way as to divide the duty of serving upon the jury among the inhabitants of a district."

In Thompson & Merriam on Juries, sectional page 134, it is said: "Statutes which prescribe the time and manner of selecting the general list, as described, are generally treated as directory. The primary object which they have in view is the just apportionment of jury duty among the citizens of the county or other jurisdiction, rather than the preserva-tion of the rights of litigants. If the names of persons not qualified for this duty get inadvertently into this list, and if such names are drawn as members of the panel for a particu-lar term, persons having litigation at that term have a com-plete remedy by challenging for cause any member of the panel of being disqualified or partial. The general rule, therefore, is that irregularities in the general list constitute no ground for challenging the array. Thus, if the officers charged with such duty fail to make the list as required by law, and the jury in default of such list is drawn from the old lists, this does not vitiate the array nor is it a cause of challenge to the polls. If the jurors are qualified individ-ually, the parties to suit are not prejudiced."

Subdivision "b" will next be considered. In refusing the motion, the presiding Judge said: "As to that list not being in the box, it appears from the facts of the case that it was

left in the clerk's office; the clerk of the Court and perhaps the other member of the board thought it was in the box; it was introduced in open Court and appears to be regular." This was only another irregularity, and is disposed of by what was said in considering subdivision "a."

The same may be said of subdivision "c."

Subdivision "d" is disposed of by the fact that the presiding Judge found as a fact that the lists were made out from the qualified electors.

The third exception is as follows: "Because it is respectfully submitted that his Honor erred in declaring that the requirements of the statutes, that the jury list should be prepared by the county auditor, the county treasurer and the clerk of the Court, and that the list should be deposited in the jury box, and that there should be only one list, and that the jury list should be made out from the list of qualified electors, were mere irregularities, and that the requirements of the statute on the subject were purely directory." This exception is disposed of by what has already been said.

The fourth exception is as follows: "Because it is respectfully submitted that his Honor erred in ordering the case to trial over the objection of the defendants' attorney, after service of written notice of appeal from the ruling of his Honor, with regard to the challenges to the panel of jurors, such notice of appeal, it is submitted, operating as a *supersedeas*." The law is well settled in this State that an appeal from an appealable order acts as a *supersedeas*. *Hammond* v. *R. R.*, 15 S. C., 10; *LeConte* v. *Irwin*, 23 S. C., 106; *Elliott* v. *Pollitzer*, 24 S. C., 81; *Simons* v. *Haithcock*, 26 S. C., 595, 25 S. E., 616; *Bank* v. *Stelling*, 32 S. C., 102, 10 S. E., 766; *Capell* v. *Moses*, 36 S. C., 559, 15 S. E., 711; *State* v. *Ry. Co.*, 45 S. C., 470, 23 S. E., 385; *Alston* v. *Limehouse*, 61 S. C., 1, 39 S. E., 192. Was the order made by his Honor, the presiding Judge, refusing to quash the array of jurors, appealable? In Wait's. Annotated Code, 669, it is said: "It is not the policy of the Code with reference to appeals, to allow a review of inter-

mediate orders, unless they are such as in effect terminate the action and prevent a judgment, from which an appeal will lie, or unless upon appeal from final judgment."

In *Capell* v. *Moses,* 36 S. C., 559, 15 S. E., 711, Mr. Chief Justice Pope uses this language: "As to the third exception, relating as it does to a right of appeal from an interlocutory order. This is not usual, and yet in some exceptional cases it is admitted. The distinction seems to arise in those matters where the Circuit Judge commits some error of law that will prejudice the appellant in his trial, and which error of law goes to the root of the matter * * * It is in only exceptional cases that this Court views with approval an appeal from an interlocutory order, for it is usually far better to await the coming here upon an appeal from a final decree or judgment, at which time it is competent for this Court to review alleged defects or errors, not only in the final decree or judgment, but also at the same time to consider alleged errors in intermediate or interlocutory orders."

It will be thus seen that it is not the policy of the law to regard with favor appeals from interlocutory orders. Sec. 344 of the Code provides that an appeal may be taken to the Supreme Court in the cases mentioned in sec. 11. The second, third and fourth subdivisions of that section are wholly inapplicable, and, therefore, need not be set out. The first subdivision is as follows: "The Supreme Court shall have appellate jurisdiction for correction of errors of law in law cases and shall review upon appeal:

"1. Any intermediate judgment, order or decree in a law case involving the merits in actions commenced in the Court of Common Pleas * * * and final judgments in such actions: *Provided,* If no appeal be taken until final judgment is entered, the Court may, upon appeal from such final judgment, review any intermediate order or decree, necessarily affecting the judgment not before appealed from."

We have hereinbefore shown that the grounds of the motion to quash the panel of jurors were mere irregularities.

They did not involve the merits of the action, and the order refusing the motion was not appealable. The Court, therefore, had the right to proceed with the trial of the case.

The fifth exception is as follows: "Because his Honor erred, it is respectfully submitted, in ruling out the evidence of Mr. P. I. Welles as to a conversation between himself and George T. Rhodes, plaintiff's intestate, showing why the said intestate should have had knowledge of the bulletins issued by said P. I. Welles, giving demerits to one of the conductors of the Southern Railway Company for loading heavy goods over long skids from the main track, on the ground that conversation between the intestate and said superintendent and defendant, P. I. Welles, were not competent; whereas, it is submitted, that such conversation being against the interest of said intestate, were competent and admissible as declarations against his interest."

In the case of *Norris* v. *Clinkscales,* 47 S. C., 488, 25 S. E., 797, the Court having under consideration sec. 400 of the Code, uses this language: "It describes four classes of persons and three characteristics of testimony. The four classes of persons are these: 1. A party to the action or proceeding. 2. A person having an interest which may be affected by the event of the trial. 3. A person who has such an interest, but which has been in any manner transferred to, or has in any manner come to, a party to the action or proceeding. 4. An assignor of a thing in controversy in the action. The three characteristics of the testimony are these: *a.* In regard to any transaction or communication between the witness and a person deceased, insane or lunatic. *b.* Against a party prosecuting or defending the action as executor, administrator, heir at law, next of kin, assignee, legatee, devisee or survivor of such deceased person, or as assignee or committee of such insane person or lunatic. *c.* When the present or previous interest of the witness may in any manner be affected by the testimony or by the event of the trial. It will be thus seen that to justify the exclusion of testimony under this *proviso* of sec. 400, it

should be shown to the satisfaction of the trial Judge, *first,* that the witness belongs to one or more or to all of the four classes of persons whose testimony may, under certain circumstances, be excluded; and *secondly,* that his testimony partakes of not merely one or two of the disqualifying characteristics classified under *a, b* and *c,* but that it possesses all three of those characteristics." ·

The witness was a party to the action. The testimony offered was in regard to a communication between the witness and a person deceased; the testimony was against a party prosecuting the action as administratrix of such deceased person, and the present interest of the witness might be affected by the testimony or by the event of the trial. These conditions rendered the testimony inadmissible.

The sixth exception is as follows: "Because his Honor erred, it is respectfully submitted, in not charging the following request of the defendants, to wit: 'That one of the risks which an employee takes in entering into the employment of another is the risk of the negligence of a co-employee or fellow-servant employed in the same department with himself and on the same piece of work, and if the jury find from the evidence that the injury to plaintiff's intestate was caused through the negligence of such co-employee or fellow-servant, who was not a superior agent or officer to the intestate, or a person having the right to control or direct the services of the intestate, and was not a servant upon a different train of cars, then the railroad company is not responsible for such negligence, and the jury must find for the defendant,' on the ground that the question of assumption of risk had not been pleaded by the defendants; whereas, it is submitted that the request was based upon the defense that the negligence, if any, was that of a co-employee, which could have been set up without being specially pleaded under the general denial of negligence on the part of the defendants in the answer."

This exception cannot be sustained, for the reason that the conductor and the employees under his direction and control

did not sustain to each other the relation of fellow-servants. *Boatwright* v. *R. R. Co.,* 25 S. C., 128; *Coleman* v. *R. R. Co.,* 25 S. C., 446; *Hicks* v. *R. R.,* 63 S. C., 559, 41 S. E., 753.

Judgment affirmed.