13258

STATE v. WELLS

(161 S. E., 177)

510

*Messrs. Price & Poag,* for appellant,

*Messrs. J. G. Leatherwood, Solicitor,* and *B. A. Morgan,* for respondent.

October 16, 1931.

The opinion of the Court was delivered by MR. CHIEF JUSTICE BLEASE.

George G. Wells, convicted and sentenced in the Court of General Sessions for Greenville County of breach of trust with a fraudulent intention, has appealed to this Court.

There are twenty-three exceptions, but counsel concede that these raise only twelve questions. We shall endeavor to dispose of the questions made without reciting the exceptions in detail.

The first indictment returned by the grand jury against the appellant contained seven counts. The substance of each count was that the appellant, while acting as clerk and treasurer of the City of Greenville, at different times, specified in the indictment, between February 2, 1927, and December 31, 1929, had feloniously taken and appropriated to his own use certain sums of money belonging to the City of Greenville. Upon call of the case for trial, after having announced that he was ready, appellant moved that the State be required to elect upon which count

it would go to trial. The presiding Judge expressed the opinion that the seven counts set forth in the indictment charged separate and distinct offenses, and granted the motion made. Upon the announcement of the ruling, the solicitor, with the consent of the Court, entered a *nolle prosequi* on the indictment. A little later in the day another indictment, the one on which the appellant was convicted and sentenced, was prepared and presented to the grand jury, who returned a true bill thereon. This indictment charged the appellant with breach of trust with a fraudulent intention as to the sum of $20,198.28, which amount it appears was made up of the various items specified in the seven counts of the first indictment. The appellant sought a postponement of the trial until the following day to give him and his counsel opportunity to examine more carefully the new indictment, for the purpose of making any motion as to the same which it might be desired to submit.

The first question raised by the appellant suggests two errors on the part of the Court. One is that it was improper to allow the solicitor to nol pros the first indictment. This Court has held that, subject to the approval of the trial Judge, the solicitor has broad power as to entering a *nolle prosequi* on an indictment at any time before the jury has been charged with the trial of the case. In *State v. Thomas,* 75 S. C., 477, 55 S. E., 893, 894, this was said: "It has been a long established practice in this State for the solicitor to nol pros indictments until a proper one can be submitted. As was said by Judge Whitner, as the organ of the Court in the case of *State v. McKee,* 1 Bailey, 651, 654, 21 Am. Dec., 499: 'The solicitor has the right to enter a *nolle prosequi* at any time before the jury is charged but not after.' Chitty, in his Common Law, 478, says: 'A *nolle prosequi* may be entered during all the stages of pleading to the indictment.' "

To sustain the position taken, appellant's counsel cites the case of *State v. Milano,* 138 La., 989, 71 So., 131. The de-

cision in that case, however, in our opinion, does not support the appellant's contention. There, the prosecuting attorney used his power to enter a *nolle prosequi* clearly for the purpose of evading the jurisdiction of the Court, in which the defendant had been indicted, and to have him indicted and tried in a Court which the prosecuting attorney regarded as more favorable for the purpose of securing a conviction. There was no attempt here on the part of the solicitor to remove the case from the Court which properly had jurisdiction of the cause.

Even, however, if it should be conceded that the decision of the Louisiana Court supports the position of the appellant, it must be apparent that, in matters of practice, we should follow the decisions of our own Court rather than those of other jurisdictions, however, highly those Courts may be respected. We may observe in this connection our understanding is that the laws of Louisiana, and the practice of the Courts of that State, have come from the civil law and not from the common law, which has been so long recognized and followed in South Carolina. The decisions of our own Court, as shown by the quotation from the *Thomas case*, compel us to hold that the solicitor, with the consent of the trial Judge, had the right to enter a *nolle prosequi* on the indictment.

The second objection, that the Court should have granted the desired continuance, cannot be upheld, since there is no showing to convince us that there was an abuse of discretion on the part of the trial Judge in refusing the appellant's request. It is well settled that continuances and postponements of trials rest largely within the discretion of the trial Judge. The appellant had announced his readiness for trial on the first indictment. His contention is that the second indictment lumped together all the charges contained in the first. If he was prepared to go to trial on the first indictment, then he must have been prepared to go to trial on the second.

In the second issue presented, the appellant urges that, since the original indictment contained seven counts for breach of trust with fraudulent intention, his motion to elect having been sustained, and the solicitor having caused a new indictment to be returned, in which all the counts in the first indictment had been joined as one count, all of which it is contended was for the purpose of evading the Court's ruling that the State should elect, it was error in the Court not to quash the second indictment, on the grounds that it was duplicitous and included several separate and distinct offenses not growing out of the same transactions.

In our opinion, the indictment was entirely sufficient and complied with the requirements of the statute in charging the crime alleged to have been committed by the appellant. The instrument on which the appellant was put to trial plainly and substantially charged that the appellant was intrusted by the City of Greenville with the sum of $20,198.28, property of the said city, and that he did "willfully, unlawfully and feloniously take and appropriate" the said sum of money "to his own use and purposes, with intention of cheating and defrauding that said City of Greenville. * * * *"

The second indictment had to stand by itself. The first indictment having been nol prossed, it was not proper for it to be considered in connection with the second, when the Judge passed upon the appellant's motion to quash because of duplicity. Time is not an element in the crime of breach of trust with fraudulent intention; and it is not necessary to prove either the precise time or the precise amount laid in the indictment. *State v. Dewees,* 76 S. C., 72, 56 S. E., 674, 11 Ann. Cas., 991. The crime is practically the same as that of larceny, and is especially prohibited by Section 43 of the Criminal Code 1922. An indictment in a case of breach of trust with fraudulent intention is sufficient if the offense be so described that the defendant may know how to answer it, the Court what judgment to pronounce, and that a convic-

tion or acquittal on it may be pleaded in bar of another indictment for the same offense. *State v. Shirer*, 20 S. C., 392.

The third contention of the appellant is that, on the second indictment, the Court should have granted his motion requiring the State to furnish a bill of particulars. We know of no provision in our law requiring the presentation or delivery of a bill of particulars. It seems to be the practice in some jurisdictions, but it is not known in ours. Generally, the same result may be accomplished, however, by a motion to quash the indictment because it does not furnish a defendant with the necessary and proper information for him to meet the charges preferred against him. Even if a motion of that kind had been made in the case at bar and overruled, we could not hold that such ruling would have been erroneous, for, as already indicated, we think the indictment here was entirely sufficient.

The fourth question presented by the appellant relates to the grand jury, which returned the bill of indictment against him, and the venire of thirty-six jurors, from which were obtained the twelve jurors, who tried and convicted him. A statement of the facts, out of which the legal issues are made, is necessary.

On October 8, 1930, within less than three weeks before the opening of the Court, at which the appellant was tried, his Honor, T. J. Mauldin, resident Circuit Judge of the Thirteenth Judicial Circuit, at chambers, upon the ex parte petition of the solicitor of the circuit, passed an order discharging the grand jury of Greenville County, which had been serving for the year 1930 and he also declared the entire jury list of the county illegal. The jury commissioners were ordered to empty the jury box and the tales box and to prepare a new list of qualified jurors, according to law, and place their names in the jury boxes. The jury commissoners were further directed to draw eighteen men to serve as grand jurors for Greenville County for the balance of the year, 1930, and thereafter, during the year 1930, to draw all petit

juries for the Courts of that county from the newly filled jury boxes. The jury commissioners complied with the order of Judge Mauldin, and, as directed by him, drew the grand jury, which acted upon the bill of indictment against the appellant, and the petit jury from which the twelve jurors, who tried the appellant, were obtained.

The order of the Circuit Judge was granted upon the petition of the solicitor, supported by the petitioner's affidavit and affidavits of the three regular jury commissioners of Greenville County. Briefly stated, it was shown by the affidavits of the commissioners that, in making up the jury lists for the year 1930 and in filling the jury boxes, the commissioners consulted the tax books of the county and paid no attention whatever to the registration books. Later, when this Court had positively held that no person who was not a qualified elector should act as a grand juror (see *State v. Rector*, 158 S. C., 212, 155 S. E., 385), the jury commissioners checked up the registration books and ascertained that from 25 per cent. to 50 per cent. of the names in the jury boxes were not those of qualified electors, and also found out that they had not placed in the main jury box for the year 1930 as many as one-third of the qualified electors of the county. It was also clearly shown that the jury commissioners did not act together in preparing the lists of jurors, but that each commissioner prepared a separate list of names, and at their meeting all these names were placed in the jury box, thereby causing many duplications in the lists. It was further made to appear that, on account of the manner in which the jury lists had been prepared, several men were drawn to serve more than once a year, many disqualified persons were drawn and summoned to act as jurors, all of which necessitated many extra venires in the Courts.

In the verified complaint of the solicitor, he called to Judge Mauldin's attention the fact that already in the Court of General Sessions for Greenville County in 1930 an indictment, charging certain persons with the crime of murder,

had been quashed by the presiding Judge, for the reason that a number of persons who served as grand jurors in returning the indictment were not qualified electors; and that another defendant had complained in the Court that he had been greatly prejudiced by the fact that so many names of jurors had to be laid aside after being drawn from the jury box because they were not qualified electors and competent jurors. The solicitor, on the facts set out by him and those contained in the affidavits of the commissioners, informed Judge Mauldin that the validity and legality of the grand jury of Greenville County "may be questioned."

By motions properly entered, counsel for the appellant took the position in the lower Court that the grand jury, which indicted the appellant, as well as the petit jury that tried him, were not legally constituted, upon the ground that his Honor, Circuit Judge Mauldin, did not have the power and authority to direct the jury commissioners to prepare a new jury list and to draw a new grand jury and a new petit jury therefrom. From the arguments submitted, it appears that counsel for the State depend upon the terms of Section 560, Volume 1, of the Code of 1922, to justify the action of the Circuit Judge, while the attorneys for the appellant contend that the language of that section was not sufficient to confer upon the Circuit Judge authority for what he did. So far as we have been able to ascertain, the question presented is a new one.

The drawing and summoning of jurors in the Circuit Courts is mainly regulated by article 2 of Volume 1 of the Code of 1922 (Section 547 et seq.). The provisions of that article come mainly from the Act of 1902 (23 Stat., 1006), entitled "An Act Relating to the Selection, Drawing and Summoning of Jurors in the Circuit Courts of This State," approved on February 7th of that year. The law was passed because the Act of February 19, 1900 (23 Stat., 315), amending the jury law, was declared unconstitutional by this

Court in the case of *State v. Queen,* 62 S. C., 247, 40 S. E., 553, decided January 13, 1902.

Section 560 of Volume 1 of the Code, which was Section 17 of the Act of 1902, is as follows: "When at any time it shall be determined by the resident Circuit Judge of any Circuit upon complaint made to him, that an irregularity has occurred in the drawing of the juries for any Circuit Court within his Circuit, or that any act has been done whereby the validity of any juries drawn or to be drawn may be questioned, it shall be lawful for such Circuit Judge to issue his order to the County Auditor, the County Treasurer, and the Clerk of the Court of Common Pleas for each county for which said Circuit Court shall be held at least five days before the sitting thereof, to proceed to draw jurors for such term, or take such measures as may be necessary to correct such error."

We are inclined to agree with the view of the appellant that the language of this section was not such as to confer upon Judge Mauldin, the resident Circuit Judge, the authority to direct the jury commissioners to prepare an entirely new jury list. The "irregularity" which the Circuit Judge, by the terms of that section, is allowed to correct, must have occurred "in the drawing of the juries" and not in the listing of the jurors, or what is usually termed the filling of the jury boxes. That particular section of the Act of 1902 was evidently enacted to take care of errors and irregularities in the actual drawing of the juries for service in the Courts, for instance, the failure of the jury commissioners to give proper notice of the time and place of the drawing. We do not see how the language of the section could be read so as to have conferred upon Judge Mauldin the power to direct the preparation of an entirely new jury list.

But we are of the opinion that the order of Judge Mauldin, under the circumstances, both as to the preparation of a new jury list and as to the drawing

of juries therefrom, can, and should be, sustained by the provisions of Section 563 of Volume 1 of the Code, taken in connection with the enactments contained in Section 560. Since Section 563 has not been referred to by counsel for either the State or the appellant in the briefs submitted to this Court, we think it is evident that all of the counsel have overlooked that section.

Section 563 comes from an Act approved January 21, 1905 (24 Stat. 917), entitled, "An Act to Amend an Act Entitled 'An Act Relating to the Selection, Drawing and Summoning of Jurors in the Circuit Courts of This State,' Approved the 7th day of February, A. D. 1902, by Adding Thereto a Section to be known as Section 18a, to Provide Against an Omission in Preparing the Jury List and Boxes."

The Section is as follows: "When the Jury Commissioners in any county in this State shall have heretofore omitted or shall hereafter omit to prepare the list of jurors for the then ensuing year, or to prepare the ballots of the names and place them in the boxes, at the time and in the manner required in this Act, the Chief Justice, any Associate Justice of the Supreme Court or any Circuit Judge shall have the authority and is required to grant an order on the application of any Solicitor or attorney at law, showing such omission by affidavit, which may be on information and belief, requiring the Jury Commissioners in question, within ten days after such order, to prepare said lists and ballots of names and to prepare the jury boxes *(nunc pro tunc)*, and all juries drawn from said boxes shall be as valid and lawful as if the said omission had not occurred."

It is clearly apparent, we think, that the Act of 1905 (Section 563, *supra*) was passed to take care of situations which could not be handled under 560, or any other provisions contained in the Act of 1902. While a resident Circuit Judge, under the terms of Section 560, could see to it that the Courts might be supplied with juries in the face of an irregularity in the drawing, there was no authority,

so far as we have been able to ascertain, in the statutory law, to provide a jury list when, for any cause, the jury Commissioners had failed to make up the list required by the law.

In Section 548, Volume 1, of the Code, Section 2 of the Act of 1902, the Jury Commissioners, composed of the County Auditor, County Treasurer, and the Clerk of Court, were, and are now, required in the month of December of each year to "prepare a list of such qualified electors, under the provisions of the Constitution, between the ages of twenty-one and sixty-five years, of good moral character, of their respective counties, as they may deem otherwise well qualified to serve as jurors, being persons of sound judgment and free from all legal exceptions, which list shall include not less than one from every three of such qualified electors under the provisions of the Constitution, between the ages of twenty-one and sixty-five years, and of good moral character. * * *"

The showing made before Judge Mauldin by the affidavits of all three of the Jury Commissioners of Greenville County disclosed that in making up the list of jurors to serve in Greenville County for the year 1930 there had not been placed in the jury box one-third of the qualified electors of the county within the proper age limits. It was the duty of the Jury Commissioners to place at least one from every three of such qualified electors in the main box. When they failed to place the required number of qualified electors of the proper ages on the jury list, and to put their names in the jury box, they omitted "to prepare the ballots of the names and place them in the boxes, at the time and in the manner required" by the language of Section 548. When the Jury Commissioners drew from the jury box names of the grand jurors for the year 1930, and the names of the jurors for service as petit jurors for the term of Court at which the appellant was tried, "an irregularity (has) occurred in the drawing of the juries" in the County of Green-

ville. The omissions and irregularities, to which the solicitor called the attention of the circuit Judge in his petition, were sufficient to base the opinion that "the validity" of the juries so drawn "may be questioned."

That there may be no misunderstanding hereafter in a matter which may be of vital importance, we think it not out of place to say that we are not holding, and do not intend to hold, that the acts of the grand jurors first drawn for 1930, or the drawing of such grand jury or the drawing of any petit juries from the jury list first prepared for 1930, were illegal and invalid, because of the failure of the Jury Commissioners to place on the jury list for 1930 the required number of qualified electors. Our Court has been liberal in holding that the provisions as to the drawing and summoning of jurors are usually directory only and not mandatory. *Hutto v. Railway Co.,* 75 S. C., 295, 55 S. E., 445; *Rhodes v. Railway,* 68 S. C., 494, 47 S. E., 689; *State v. Smalls,* 73 S. C., 516, 53 S. E., 976; *State v. Smith,* 77 S. C., 248, 57 S. E., 868. Irregularities in the listing, drawing, and summoning of jurors may be often waived, and, even if not waived, are not in themselves acts so prejudicial as to require the quashing of a venire or to warrant the Court in setting aside a judgment based upon a finding or verdict of a jury irregularly drawn. The purpose of our jury laws, found in Article 2 of Volume 1 of the Code, is to obtain fair and impartial jurors of good citizens who possess the constitutional qualifications of jurors and to have in the Courts, when needed, the proper number of such jurors. The Act of 1902, as amended in 1905, embraced in the Code as Article 2, Volume 1, was enacted by the legislative branch with the intention of curing irregularities and technical errors, which so often occurred previous to those enactments, in the manner of obtaining jurors in the Circuit Courts, and to prevent the great delays and expenses incidental to the trial of causes. It is the purpose of this Court to carry out the legislative intent, when it is possible

to do so, without infringing the constitutional provisions as to the qualifications of jurors.

We are not able to agree with the contention of the appellant that, even if Judge Mauldin had the right to grant his order in so far as the same was applicable to petit jurors he was entirely without authority in the matter of the grand jury. The contention seems to be based upon the fact that Section 560 does not use the words "grand jurors." Taking the whole of Article 2 into consideration, we are of the opinion that it applies to grand jurors as well as petit jurors. The heading of the article is "Jury Commissioners—Drawing and Summoning Jurors." The first Section (547) defines who shall constitute Jury Commissioners; Section 548 refers to the manner of the preparation of the jury lists; Section 549 as to the jury boxes; Section 558 states the manner of supplying deficiencies in the number of grand or petit jurors; Section 560 provides for the "drawing of the juries for any Circuit Court," a grand jury is a jury of a Circuit Court; and Section 566, the last Section of the Article, specifically gives grand juries the right to employ expert accountants under certain conditions. If the General Assembly had intended the provisions of Sections 560 and 563 to refer only to petit jurors, we think they would have inserted in those Sections the word "petit," as they did in Section 550. Certainly, we have as much right, in construing Sections 560 and 563, to regard the word "grand" as being used as we would have the right to adopt the appellant's suggestion and insert the word "petit," which also was omitted from those sections.

The question here for determination is not as to the legality or invalidity of the grand jury and petit jury drawn from the original 1930 list. That question was not even one necessarily to be decided by Judge Mauldin. The question before him for decision was whether or not it satisfactorily appeared that the Jury Commissioners had not prepared the jury list in the manner required by law, and if, for any

reason, the validity of the juries drawn by them might be questioned. When Judge Mauldin became convinced, on the showing made, that. the validity of the juries might be questioned, and that there had been an omission by the Jury Commissioners in the performance of their duties, he had full authority to endeavor to supply for the Courts of Greenville for the remainder of the year 1930 the necessary number of properly qualified jurors.

In support of the appellant's position, it is urged that the power to dismiss jurors and order new venires drawn is a dangerous one, and should not be granted to even a judge. To this position, so ably argued in this Court, there are three answers. The first is, that the Legislature had the power to grant this authority to the judges, and the Legislature has granted it. The second is, that we must assume that the judges of the state will be careful in the exercise of a power so great, and, if they should use it oppressively, they are answerable for such conduct. The third is, that it is much better for the common weal to have some proper authority to see that the Courts are supplied in due time with the necessary number of qualified jurors than it is for our Courts to fail in the performance of their functions because some Jury Commissioner has failed in the discharge of his duties.

The indictment returned by the grand jury on October 29, 1930, charged the appellant with the breach of trust, with a fraudulent intention on December 31, 1929, of the sum of $20,198.28, "the exact denominations being unknown to the grand jurors aforesaid." The Court allowed the state to introduce evidence tending to show certain misappropriations of the funds of the City of Greenville as follows: $4,716 paid into the city treasury by the Camperdown Mills on or about December 19, 1927; $10,393.84 paid by the Southern Bell Telephone & Telegraph Company on or about October 30, 1928; $2,461 paid by the Paris Mountain Water Company on or about Feb-

ruary 9. 1927; and certain other moneys paid by various parties into the city treasury. In the fifth question submitted by the appellant, it is urged that the admission of this evidence was erroneous. In the argument, it is contended that the indictment charged a breach of trust of a certain specified sum on December 31, 1929, that the evidence showed the financial affairs of the city were conducted upon an annual basis, the appellant having to account at the end of each year for all funds intrusted to his care and keeping, and therefore the state should not have been permitted, over appellant's objection, to go into proof of offenses alleged to have been committed in the years 1927 and 1928. As stated before, time is not an element in the offense of breach of trust with a fraudulent intention. The state had the right, under the indictment on which the appellant was tried to prove the misappropriation of any sum of money by the appellant at any time prior to the finding of the indictment by the grand jury, which was embraced and included in the sum charged in the indictment to have been wrongfully misappropriated.

When Mr. J. B. Doar, an expert accountant, a witness on behalf of the state, was being examined, he was asked by counsel for the state this question: "Will you tell the jury, please, how one who has checks and moneys for deposit and use can cover cash with a check as you answered Mr. Price yesterday?" The objection to the question on the part of the appellant was overruled, and the witness was allowed to go into detailed explanation as to how he thought the defalcations on the part of the appellant were concealed, or attempted to be concealed, on the books kept by him. It is urged here, in the sixth issue made by the appellant, that the testimony of the witness should not have been admitted, the specified objection being that it was "opinion evidence."

The question asked on the part of the prosecution was in response to certain questions asked of the witness on his

cross-examination by an attorney for the appellant. The appellant's counsel had specifically asked the witness how a certain $10,000 amount, to which reference had been made, could have been gotten out of the bank by the appellant, and the witness had stated that the appellant could have withheld cash to that amount and covered it up with a check. The witness had qualified as an expert accountant, and in reply to the testimony brought out from him on his cross-examination the state had the right to show by him the methods adopted by the appellant in his bookkeeping. We think the evidence was relevant and in reply to that adduced by the appellant on the cross-examination of the witness; it was more in the nature of bringing out the facts than an expression of the opinion of the witness. Even if it was "opinion evidence," we think it was competent, for it was a reply to such evidence brought out by the appellant from the same witness.

Appellant asked for a directed verdict in his favor upon the ground that the evidence showed a variance between the indictment and the proof; that the proof showed conclusively that the appellant was tried upon several alleged offenses merged in one indictment. Without attempting a review of all the evidence in the case, the record here being voluminous, we think the Circuit Judge could not have done otherwise than to submit the case to the jury. There was certainly sufficient proof of the fraudulent misappropriation of the sum of $6,000, paid to the appellant in his capacity as treasurer of the City of Greenville by the Southern Bell Telephone & Telegraph Company. The indictment was sufficient to cover this alleged misappropriation.

The record shows that auditors employed by the city went to the appellant's office on December 31, 1929, to begin preparations for their work of examining the books, records, and accounts of the city clerk. The auditors were unable that day to get the cash book or the tax abstract; the appellant claiming that he could not let the auditors have those

books then, as he had to do some work on them. Early on the morning of January 1, 1930, appellant went to his office and either burned or destroyed practically all of the records in his office for the year 1929. On the morning of January 2nd, appellant shot himself with a pistol and swallowed a quantity of bichloride of mercury in an attempt to commit suicide

While the only defense of the appellant offered to the main charge was the clear-cut and positive declaration that he had not stolen one penny of the money of the City of Greenville, an effort was made to show that the conduct of the appellant in destroying the records and his attempt to commit suicide was due to his mental condition, a temporary insanity brought about because of the very hostile attitude of the auditors toward him. In carrying out the plan of defense, an effort was made to have the appellant testify as to a conversation he had with his brothers on December 31, 1929, as to the effect the conduct and language of the auditors had upon him; also the appellant tried to bring out from his wife testimony as to certain statements made by the appellant to her on the day of the attempted suicide, after the appellant had been carried to the hospital for treatment. The trial Judge excluded the evidence, and it is charged in the eighth issue presented here that he committed prejudicial error in so doing.

Under a decision of this Court, when there is an ▮▮▮▮ issue of insanity, the door is pretty wide open as to the admission of evidence tending to prove or disprove the issue, and the conduct of the person alleged to be insane, including his spoken words and the manner of his speech, is competent. *State v. Driggers,* 84 S. C., 526, 66 S. E., 1042, 137 Am. St. Rep., 855, 19 Ann. Cas., 1166. Evidence on the issue of insanity, however, must be left very much to the discretion of the trial Judge, otherwise oftentimes there would be practically no end to a trial of a case. Before the Court would feel justified in reversing a judg-

ment adverse to a defendant for the failure to allow him to introduce some little evidence, which might or might not tend to show his insanity, we would wish to feel that the ruling of the Judge on that matter was such as to really amount to substantial prejudice against a defendant. An examination of the record here convinces us that the evidence which the appellant sought to produce from the witnesses in question did not really amount to much, and especially is this so when we take into consideration the fact that practically everything that was sought to be brought out from the witnesses was testified to by the appellant. The Court permitted him to relate the conversation he had with his wife at the hospital, and that conversation was more in the nature of a denial of his guilt of misappropriating funds intrusted to his care than it was to establish his insanity. The appellant was also permitted to testify very fully that the auditors, who examined his books, were hostile. Under all the circumstances, we are unable to hold that the trial Judge abused his discretion in refusing the appellant and his wife the right to answer the questions asked of them. In fact, we think, considering the whole record, that the Court was very liberal with the appellant in allowing him to offer any and all testimony sought to be introduced which could possibly have been of benefit to him as to the issue of insanity.

The appellant asked his witness, Mr. John M. Milam, an auditor, who had made audits for the City of Greenville prior to the year 1927, this question: "During that time you made the audits did you find Mr. Wells accounting to the city for all the money he collected?" Objection to the question on the part of the State was sustained. In the ninth issue, it is urged that this was harmful error.

We do not think it necessary to decide positively that the answer to the question would have been admissible. For some reasons, it would appear, however, that the appellant should have been allowed to obtain an answer. There is

much force in the argument of his counsel on the point. The paramount issue in the charge of breach of trust is the intent, and great latitude, perhaps, should be allowed to both the prosecution and defense on that question. See *Hamer v. State,* 60 Tex. Cr. R., 341, 131 S. W., 813. In the case at bar, the prosecution charged a breach of trust on December 31, 1929, yet the State was properly allowed, under the holdings of this Court, to show alleged breaches of trust as far back as 1927. Certainly, the appellant had the right to show that his books were correct during the times the State charged they were incorrect.

But the question presented in the issue under consideration is as to the correctness of his books prior to the year 1927. If there had been any evidence on the part of the state to show a breach of trust prior to 1927, then, without doubt, the testimony of Mr. Milam, showing that the appellant's books were correct during that time, would have been competent.

Without deciding the relevancy of the testimony the appellant sought to adduce from Mr. Milam, we are quite confident that its rejection was not sufficient to warrant us in holding that the error, if any, was of a reversible nature. The record shows that the Circuit Judge permitted the jury to bring in a special verdict showing the particular misappropriation of funds of which the appellant was found guilty, and the jury specifically found him guilty of only one misappropriation, namely, the sum of $6,000, funds received by him from the Southern Bell Telephone & Telegraph Company in the year 1928. The correctness or incorrectness of the appellant's books, prior to the year 1927, could therefore have had no effect upon the verdict returned by the jury, and that reason is sufficient to prevent us from sustaining exceptions raising the question passed upon.

A few days prior to the trial, on the petition of the appellant, the Court made an order permitting appellant's counsel, together with his brother, a public

accountant, the right to examine the books of the City of Greenville, in the City Hall, in the presence of city employees. The appellant sought in the trial to introduce this order in evidence, presumably for the purpose of showing that the city had declined to allow the appellant's brother, the accountant, to examine the books of the city treasurer, and it is urged that the exclusion of the paper was prejudicial error. It is argued that the attitude of the city officials was an issue in the trial. The order of the Court, appearing in the record, does not show that the city or any of its officials had refused an examination of the books. It only shows on its face that the appellant had requested the Court for the right to have the books examined, and the request had been granted. Nothing contained therein disclosed any hostile attitude on the part of the city officials to the appellant. The brother of the appellant testified in the Court that he had been refused the right to examine the books prior to the granting of the Court order. It is impossible for us to find that the appellant was prejudiced, under the circumstances, in the ruling of the Court that the order could not be read to the jury.

After the jury had considered the verdict they should render for about an hour and a half, they returned to the courtroom for further information. Upon their request, they were instructed by the trial Judge to the effect that, if they found there had been a breach of trust with a fraudulent intention on the part of the appellant in any amount more than $20, it would be their duty to render a verdict of guilty; and, while they were not required in returning their verdict to name any specific amount found by them to have been misappropriated, the jury might so state in their finding, if they desired so to do. Along with the verdict of guilty, the jury returned this special finding, signed by the foreman: "The only specific amount we find the defendant guilty of is the item of the Southern Bell Telephone & Telegraph Company of Six Thousand Dollars."

In the eleventh issue submitted, it is urged that under the circumstances of the case, with the original indictment of seven counts, the motion to elect, the *nolle prosequi*, the new indictment joining all the offenses in one count, and the effort of the defense throughout the trial to confine the State to a particular charge, it was error for the Court to instruct the jury that they might specify which of the several items the jury found against the appellant.

If the defendant was guilty at all—and the jury so found—this special finding could not have injured him; to the contrary, it must have been to his advantage. He was charged with the misappropriation of more than $20,000.00. It is to be assumed that in fixing the sentence the Court would have taken into consideration the sum of money which the jury found the appellant had misappropriated. If a general verdict, without the special finding, had been rendered, the Court might have been justified in assuming that the jury had found the appellant guilty of a breach of trust as to the full amount of $20,000.00 charged against him. The special finding of fact showed that the jury, while believing the appellant to be guilty, as charged in the indictment, had not misappropriated the full amount stated in the instrument, but that he had misappropriated a smaller sum, $6,000.00 in amount. The special finding of fact was of great aid to the Court in determining the proper sentence to be imposed. Under Section 542, Volume 1, of the Code, the Court had the right to direct the jury "to a special verdict in writing upon any or all of the issues. * * *"

The last issue relates to the declination of the trial Judge to grant the appellant's motion for a new trial on the ground of newly discovered evidence. It was based mainly upon the alleged discovery that the auditors, who appeared as witnesses for the State, were mistaken in their claim that there had been a misappropriation as to the funds received by the appellant from the Southern Bell Telephone & Telegraph Company. This motion was

refused for two reasons given by the Court, the failure of the appellant to exercise due diligence in discovering the evidence before the trial, and because, if the same had been presented, it most likely would not have changed the result. Under our decisions, the granting or refusing of new trials, on the ground of after discovered evidence, is within the discretion of the trial Judge, and this Court will not inter- fere with that discretion, unless it manifestly appears that there was an erroneous exercise of it. Along with the tran- script of the record which has come to this Court, we have examined many of the original papers and records intro- duced in evidence in the lower Court. We do not deem it necessary to go into a detailed statement as to all of these records, vouchers, etc. A careful examination of the grounds of the motion for a new trial, in connection with the whole record in the case, has failed to convince us that the trial Judge committed legal error in refusing the new trial mo- tion.

The judgment of this Court is that all the exceptions be overruled, and that the judgment of the Court of general sessions of Greenville County be, and the same is hereby, affirmed.

MR. JUSTICES STABLER, CARTER, and BONHAM concur.

## ON PETITION FOR REHEARING

PER CURIAM. Petition refused.

MR. CHIEF JUSTICE BLEASE, and MESSRS. JUSTICES STAB- LER and CARTER concur.

MR. JUSTICE COTHRAN (dissenting) : The opinion here- tofore filed by me dissenting from the opinion of a majority of the Court which has been filed is withdrawn, and the following is substituted as a dissent therefrom and also as a dissent from the proposed order dismissing the petition for a rehearing:

There are three subjects that I shall discuss; the questions raised in them, in my opinion, should have been resolved in

favor of the defendant, causing a reversal of the judgment and sentence of the Court, upon the conviction of the defendant: (1) The objection to the order of his Honor, Judge Mauldin, directing the emptying and refilling of the jury box for the remainder of the year 1930; (2) the objection to the order permitting the solicitor to nol pros. the original indictment and force the defendant to trial upon a new indictment which jumbled in one count all of the separate offenses set forth in the original indictment, a proceeding manifestly intended to evade the consequences of the order requiring an election, and thus to deprive the defendant of the benefit of that order; (3) the objection to the refusal of the defendant's motion for a bill of particulars.

I. The objection to the order of his Honor, Judge Mauldin, directing the emptying and refilling of the jury box for the remainder of the year 1930.

It appears that on October 8, 1930, a short while before the opening of the Court at which it was proposed to try the defendant, the solicitor of the Circuit made an *ex parte* application to Judge Mauldin, the resident judge of that circuit, at his chambers in Pickens, for an order declaring the jury box which had been filled in December, 1929, invalid, and directing the jury commissioners to empty and refill it for the remainder of the year 1930. The application was based upon a petition, verified by the solicitor and supported by the affidavit of the several jury commissioners.

The grounds of the invalidity of the jury box, set forth in the petition of the solicitor, were: (1) That the jury commissioners, in making up the list required by Section 548 of the Code of Civil Procedure, and in filling the box as required by Section 549, used a large number of names of those who were not qualified electors, and therefore not qualified jurors; (2) that the jury commissioners failed to list and deposit in the jury box not less than one-third of the names of those who were qualified electors of the county under the Constitution.

These were the only two objections to the validity of the jury box advanced in the petition; there was no objection that the jury list had not been prepared at the time fixed by the statute nor that the "separate papers or ballots" upon which the names were written had not been placed in the box as required; nor that any other specific irregularity had occurred.

The alleged supporting affidavits of the jury commissioners, practically upon a common form, present only the fact that they listed and placed in the box the names of citizens as they appeared upon the tax books; that they paid no attention to the registration books; and that, as a consequence, as they later ascertained, from 25 to 50 per cent. of the names listed and placed in the box were not those of qualified electors. It is true that they aver that "it is now evident that the Jury Commissioners did not place in said box as many one-third of the qualified electors of said County"; a conclusion, an inference, which they arrived at, and not the statement of a fact.

I think that it is clear that the order of Judge Mauldin, at chambers, cannot be sustained under Section 559, as that section specifically requires an adjudication "by any Court of competent jurisdiction."

And I agree with the conclusion of the Chief Justice referring to Section 560 as follows: "We are inclined to agree with the view of the appellant that the language of this section was not such as to confer upon Judge Mauldin, the resident Circuit Judge, the authority to direct the jury commissioners to prepare an entirely new jury list. The 'irregularity' which the Circuit Judge, by the terms of that section, is allowed to correct must have occurred 'in the drawing of the juries' and not in the listing of the jurors, or what is usually termed the filling of the jury boxes. That particular section of the Act of 1902 was evidently enacted to take care of errors and irregularities in the actual drawing of the juries for service in the Courts, for instance, the failure

of the jury commissioners to give proper notice of the time and place of the drawing. We do not see how the language of the section could be read so as to have conferred upon Judge Mauldin the power to direct the preparation of an entirely new jury list."

So that the inquiry is reduced to the applicability of Section 563. That section is limited to the action of the Judge who may have adjudicated that the objection urged to the validity of the jury box was an act of omission, not of commission. Its language is specific upon this point. For instance, the fact that the list and deposit may have included the names of persons who were not qualified to serve as jurors, as required by Section 548, would have been an act of commission and not of omission, a ground for a motion to quash the indictment (*State v. Rector,* 158 S. C., 212, 155 S. E., 385), and not a ground for invalidating the jury box.

A conclusive reason for the inapplicability of Section 563 is contained in the following extract from the opinion of the Chief Justice with which I agree: "That there may be no misunderstanding hereafter in a matter which may be of vital importance, we think it not out of place to say that we are not holding, and do not intend to hold, that the acts of the grand jurors first drawn for 1930, or the drawing of such grand jury or the drawing of any petit juries from the jury list first prepared for 1930, were illegal and invalid, because of the failure of the jury commissioners to place on the jury list for 1930 the required number of qualified electors. Our Court has been liberal in holding that the provisions as to the drawing and summoning of jurors are usually directory only and not mandatory. *Hutto v. Railway Co.,* 75 S. C., 295, 55 S. E., 445; *Rhodes v. Railway,* 68 S. C., 494, 47 S. E., 689; *State v. Smalls,* 73 S. C., 516, 53 S. E., 976; *State v. Smith,* 77 S. C., 248, 57 S. E., 868. Irregularities in the listing, drawing and summoning of jurors may be often waived, and, even if not waived are

not in themselves acts so prejudicial as to require the quashing of a venire or to warrant the Court in setting aside a judgment based upon a finding or verdict of a jury irregularity drawn."

I think an aditional reason lies in the fact that there is no legal evidence that the box contained less than one-third of the qualified electors of the county.

There being therefore no authority under any one of the sections referred to, 559, 560, 563, the error in the order of his Honor, Judge Mauldin, is apparent.

II. The objection to the order permitting the solicitor to nol pros the original indictment and force the defendant to trial upon a new indictment which jumbled in one count all of the separate offenses set forth in the original indictment, a proceeding manifestly intended to evade the consequences of the order requiring an election, and thus to deprive the defendant of the benefit of that order.

It appears that the original indictment contained seven separate counts, each charging a separate and distinct offense of breach of trust with a fraudulent intention. The defendant moved the Court for an order requiring the state to elect upon which count it would go to trial; his Honor, Judge Dennis, held that the defendant's motion was proper, and granted it; the solicitor then, without declaring his purpose, moved the Court to enter a nol pros of the original indictment. His purpose, though not declared, is manifest from what followed; he immediately, as soon as it could be prepared, on the same day, handed out a new indictment. charging the offense of breach of trust, up to a certain date, which embraced in the aggregate the several amounts charged to have been the subject of a. breach of trust contained in the original indictment. The new indictment was presented to the grand jury, which returned a true bill thereon. Upon the call of the case thereafter for trial the defendant moved for an order quashing the indictment upon his demurrer thereto upon the ground that the indictment em-

braces several distinct and separate offenses, and seasonably reserved the objection that proceeding under it was an improper evasion of the order requiring an election, and deprived the defendant of a benefit to which he was entitled and which had been accorded him under the Judge's order requiring an election.

The only criticism of the Judge's order permitting a nol. pros. of the original indictment is his failure to require the solicitor to state the ground and purpose of his motion; the Judge is the helmsman of the Court, and his imprimatur is necessary to such action by the solicitor; this cannot be given without a knowledge of the ground and purpose.

In *People v. Newcomer,* 284 Ill., 315, 120 N. E., 244, 248, the Court said: " * * * We regard it as essential to the due administration of justice and the protection of the people by the enforcement of criminal laws that he (referring to the prosecuting attorney) should not have such power but the consent and approval of the Court should be required."

In *People v. Mortenson,* 224 Ill. App., 221, it was held, quoting syllabus: "When a *nolle prosequi* * * * is filed by the State's attorney, discretion is imposed upon the Court which should not approve the motion to dismiss unless it also is of the opinion that the due administration of justice requires that the prosecution be ended, especially when a criminal contempt of Court is charged."

In the case of *State v. Thomas,* 75 S. C., 477, 55 S. E., 893, an indictment against one defendant was nol prossed for the purpose, as the Solicitor announced, of handing out a new indictment joining another as defendant with the one indicted. The Court very properly held that the purpose was entirely legitimate, and sustained the nol pros.

Under the decisions of this Court and the well-recognized practice, a very wide discretion is committed to the prosecuting officer in the matter of entering a nol pros to an indictment, the exercise of which will not ordinarily be inter-

fered with by the Court; but it is manifest that the exercise of this discretion must be in a commendable manner. The Judge in approving it naturally has the right to assume that the purpose is entirely proper in the protection of the interests of the State and not in derogation of the adjudicated rights of the defendant.

In 16 C. J., 435, the usual grounds for the allowance of the order are stated in detail; generally they are some irregularity in the previous proceeding or of some defect in the indictment which could not be cured by an amendment. In this instance, there was no irregularity and no defect in the indictment; it was entirely correct in uniting in the indictment the several counts as had been done; the defendant had the right, which he exercised, of moving the Court for an order requiring the solicitor to elect upon which of the separate counts charging separate and distinct offenses, he would go to trial; this motion was made by the defendant, and was granted by the Judge. The necessary effect of presenting a new indictment which jumbled all of the separate offenses set forth in the original indictment into one charge was manifestly intended to evade the consequences of the order requiring an election, and thus to deprive the defendant of the benefit of the order.

In the case of *State v. Milano,* 138 La., 989, 71 So., 131, 132, the defendant had been indicted for a violation of the prohibition law in the city Court of Shreveport; there were other cases pending in that Court against other defendants for the same offense; upon the trial of certain defendants in these other cases the presiding Judge directed verdicts in favor of the defendants upon the ground that he would not permit a conviction based upon the uncorroborated testimony of negro "spotters" to stand; thereupon the prosecuting officer moved for a nol pros in the case against the defendant, for the sole purpose of transferring the case to the district Court, a Court originally of concurrent jurisdiction, before another Judge, where he would not be shackled by a

similar ruling of the Judge in the city Court; the defendant was convicted in the district Court to which the prosecuting officer had access. Upon appeal, the Court said: "The abandonment of a prosecution, in a Court having jurisdiction, for an alleged violation of a sumptuary or blue law, and the institution of the prosecution, for the same offense, in another Court of concurrent jurisdiction, under the circumstances and for the apparent purpose for which it was done in this case, is not calculated to increase the respect that is due to the Courts; and we would not be inclined to encourage the practice, if we had no precedent for our present ruling."

See, also, *Edelhoff v. State,* 5 Wyo., 19, 36 P., 627.

There is another serious objection to the proceeding under review:

If the trial had proceeded as directed by the order of election, the defendant would have had the right to object to the introduction of any evidence tending to sustain any one of the other six counts in the original indictment upon the well-established principle declared in *State v. Knox,* 98 S. C., 114, 82 S. E., 278, and other cases that evidence of other distinct crimes is inadmissible except under certain circumstances, clearly detailed in *State v. Lyle,* 125 S. C., 406, 118 S. E., 803, 807. In the last-cited case Mr. Justice Marion, with his accustomed clarity, declares: "Whether evidence of other distinct crimes properly falls within any of the recognized exceptions noted is often a difficult matter to determine. The acid test is its logical relevancy to the particular excepted purpose or purposes for which it is sought to be introduced. If it is logically pertinent in that it reasonably tends to prove a material fact in issue, it is not to be rejected merely because it incidentally proves the defendant guilty of another crime. But the dangerous tendency and misleading probative force of this class of evidence require that its admission should be subjected by the Courts to rigid scrutiny. Whether the requisite degree of relevancy exists

is a judicial question to be resolved in the light of the consideration that the inevitable tendency of such evidence is to raise a legally spurious presumption of guilt in the minds of the jurors. Hence, if the Court does not clearly perceive the connection between the extraneous criminal transaction and the crime charged, that is, its logical relevancy, the accused should be given the benefit of the doubt, and the evidence should be rejected."

It was impossible then for the presiding Judge to exercise that required scrutiny when all of the distinct charges were included in the ultra-complex indictment.

Another objection, rather from a psychological than a legal point of view, is the tendency of the jury to compromise the verdict by a release of all the charges except one, when, if there had been a separate trial upon it, uninfluenced by the evidence upon six others, the verdict might have been an acquittal.

I may add in reply to the addendum to his opinion, submitted by the Chief Justice:

I do not at all question the right of the Solicitor, under ordinary circumstances, and with the approval of the presiding Judge, to enter a nol pros upon an indictment, in the interest, as the Solicitor may think, of the prosecution; or that the exercise of that right will ordinarily be questioned by the presiding Judge who is made acquainted with the purpose of the Solicitor. I do not think that the right is an absolute one, to be exercised by the Solicitor independently of the approval of the presiding Judge, who necessarily cannot approve without a knowledge of the Solicitor's object.

It is sought to differentiate the *Lousiana case* from the case at bar upon two grounds: (1) That in that case the Solicitor attempted to remove the case from a Court which had jurisdiction; while in the case at bar no such attempt was made. The case did not at all turn upon that point, but upon the point that the Solicitor was attempting to get away

from a Judge hostile to the interests of the State. In this case, while remaining in the same Court, the effort was made to evade the ruling of the Judge according to the defendant a valuable right; (2) that the laws of Louisiana and the practice of the Courts have come from the civil law, and not, as with us, from the common law. What difference that can make has not been pointed out. There is nothing in the report of the case to show that the decision was based upon some peculiar provision of the civil law.

III. The objection to the refusal of the defendant's motion for a bill of particulars.

The record shows that the defendant had been indicted upon an indictment setting forth seven distinct and separate counts. When the defense made a motion to require the Solicitor to elect which count the State would go to trial on, the original indictment was nol prossed and another indictment prepared. The defense demurred to this indictment upon the ground that it clearly was a jumbling of the counts of the first indictment, and that several distinct offenses were joined in one indictment. The Court overruled this motion, thereby in effect holding that the position of the defense was incorrect, and that it was an entirely new offense.

The defense, therefore, had the right to know the nature of the charge against him and made a motion for a bill of particulars.

The object of a bill of particulars is clearly set forth in 31 Cyc., p. 565, as follows: "The proper office of a bill of particulars is to inform the opposite party and the Court of the precise nature and character of the cause of action or defense for which the pleader contends in respect to any material or issuable fact in the case and which is not specifically set out in his pleadings, and which cannot, in many cases, be given in the pleading without great prolixity."

In the footnote to the case of *State v. Lewis,* 26 Ann. Cas., 1203, it is said: "The office of a bill of particulars in a criminal case is to advise the defendant more fully of the

charge against him, where the indictment is good as a pleading, but the Court may be of the opinion that the defendant is entitled to some further information before being compelled to go to trial."

The case just quoted is authority for the principle that the law of bills of particulars applies to criminal as well as civil cases, and in the note at page 1207, decisions from the United States Supreme Court, and many of the State Supreme Courts, are cited to show that a defendant in a criminal case is as much entitled to the right as in a civil case.

The remedy was particularly appropriate in the case at bar; the original indictment had been eliminated, and the new one contained a general charge of breach of trust to a certain stated amount in gross. The defendant was entitled to a particular statement of the items constituting that charge in order to properly present his defense.

I have not deemed it necessary to consider the other questions raised upon the appeal.

I think, therefore, that the defendant's motion for a dismissal of the second indictment should have been granted; the effect being a reversal of the judgment of the Circuit Court and a remand of the case for proceedings conformable to the order of election; at the least, that a new trial should be ordered upon the second ground above stated.

MR. JUSTICE BONHAM: I concur in the dissenting opinion of Justice Cothran that there should be a rehearing for the reasons stated in the first ground of that opinion.