STATE v. CAMPBELL.

1. MURDER—EMPANNELING JURY.—While a jury were deliberating in their room, a prisoner charged with murder was put upon his trial, the trial judge ordering the names of the disengaged jurors to be put into the hat and presented to the prisoner as drawn for acceptance or

rejection. *Held*, that there was no error in so doing. *State* v. *Jackson*, 32 S. C., 27, approved and followed.

2. IBID.—IBID.—Of the disengaged jurors, the names of six were accidentally omitted by the clerk, and this omission was not discovered until the hat was emptied, eleven jurors having been sworn and seven rejected. The judge ordered the clerk to put these six names into the hat and proceed with the drawing, and defendant accepted the first juror so drawn. *Held*, that the defendant had no legal ground of complaint.

3. PROOF OF THREATS.—There was no error of law committed by the Circuit Judge in permitting testimony to be received of a threat made by the prisoner against the deceased one month before the homicide. The law fixes no limit beyond which a threat would be incompetent evidence.

Before HUDSON, J., Kershaw, February, 1891.

This was an indictment against James Campbell, charging him with the murder of Zack Thorne on the night of Christmas eve of 1890. The opinion states the case.

*Mr. E. D. Blakeney*, for appellant.

*Mr. Nelson*, solicitor, contra.

January 7, 1892. The opinion of the court was delivered by

MR. CHIEF JUSTICE McIVER. Under an indictment for murder, the defendant was convicted of manslaughter, and appeals from the judgment rendered upon the verdict on the following grounds: "1st. That his honor erred in refusing to defendant the right to a full panel from which to draw the jury, there being in attendance upon the court at the time the full panel of thirty-six jurors. 2nd. That his honor erred in ordering the clerk of the court to place in the hat the names of the six jurors left out by said clerk before the commencement of the drawing of the jury in this case. 3rd. That his honor erred in admitting the evidence of Ben McCoy, a witness for the State, as to certain threats alleged to have been made by the defendant against the deceased, one month prior to the homicide."

The first and second grounds of appeal grow out of the following facts, as appears from the statement copied from the "Case"

as prepared for argument here, to wit: "When this case was called for trial, and before proceeding to draw the jury, Mr. Blakeney (counsel for the prisoner) called the court's attention to the fact that there were twelve jurymen in the jury room engaged in the consideration of another case, and he asked for a full panel. *The Court:* Mr. Blakeney, that question has been passed upon by our Supreme Court. In that case the same state of affairs existed, where twelve jurymen were sitting on a case. You are not entitled to a full panel, or, you are not entitled to wait until the other jurors come in. The objection is overruled. (Exception noted.) The drawing of the jury commenced and proceeded until eleven jurors had been sworn and seven challenges exercised by the defendant, when the clerk announced that the panel was exhausted. *The Solicitor* (to the clerk): How many jurors are in attendance? *The Clerk:* Thirty-six. *The Court:* That makes six short and unaccounted for. On investigation, the clerk discovered six names that had been overlooked, and which had not been put in the hat at the commencement of the drawing of the jury to sit on this case. Mr. Blakeney objected to these six names being now placed in the hat. *The Court:* The clerk accidentally omitted to put in the names of those six jurors in the hat, and did not find it out until all that he had put in were drawn out, then he found those six names outside. You have selected eleven jurors. I rule that these six names can go in and the drawing be continued as though they had gone in at the first. (Exception noted.) The six names were put in the hat, and the first one drawn out was accepted by the defendant. *The Court:* The stenographer will make note of the further fact that the defendant had only made seven challenges prior to this, and that from the six names ordered to be placed in the hat, the first name drawn out was accepted by the defendant."

From this statement of the facts we think it clear that there was no error in the rulings of the Circuit Judge in respect to the organization of the jury. The questions presented by the first and second grounds of appeal have been conclusively determined by the decision of this court in the recent case of *State* v. *Jackson*, 32 S. C., 27. In that case, as in this, when the organization of the jury was commenced, a jury was in their

room engaged in the consideration of another case, and the counsel for the prisoner moved to await the return of the absent jury, so that the names of the entire panel in attendance on the court might be placed in the hat before commencing the drawing of the jury ; but the motion was refused, and this court sustained the Circuit Judge in the refusal of the motion. In the case just cited the following language was used (p. 40) in reference to the objection based upon the ground that the names of all the jurors in attendance upon the court had not been placed in the hat before the drawing of the jury was commenced : "We do not see how it is possible that this could have impaired or in any way affected any legal right to which appellant was entitled. It could not possibly affect his right of challenge, which, it is well settled, is a right to *reject*, and not a right to *select*, jurors (*State* v. *Wise*, 7 Rich., 412, followed in numerous cases, including the very recent case of *State* v. *Jacob*, 30 S. C., 131), as is conclusively shown by his having obtained a jury without exhausting his peremptory challenges."

For a similar reason we do not think that the second ground of appeal can be sustained. In *State* v. *Jackson*, *supra*, it appeared that after the drawing of the jury had commenced, the absent jury returned into court, when their names were placed in the hat and the drawing proceeded, and, as in this case, before the prisoner had exhausted his peremptory challenges, a jury was obtained which was duly charged with the trial of the case. We do not see how this case differs in principle from Jackson's case, The placing of the six names in the hat which had been "accidentally omitted" after the drawing had commenced, could not possibly have affected any legal right of the prisoner any more than the placing the names of the absent jury in the hat after they had returned into court and before the drawing was completed. It is true that rule 25 of the Circuit Court, cited and relied upon by the counsel for appellant, does seem to imply that the names of all the jurors in attendance upon the court should be placed in the hat *before* the drawing commences, though the rule does not in express terms so require ; but this rule is simply directory as to the mode of proceeding, and where the mode actually adopted does not deprive the prisoner of any

legal right to which he is entitled, it cannot be said that there was any such error of law as would entitle the prisoner to a new trial. Hence it has been held that where the prisoner's right of peremptory challenges has not been denied or impaired, he has no legal ground of complaint; and therefore where he has obtained a jury without exhausting his peremptory challenges (the right of challenge being simply a right to *reject* and not a right to *select* a juror) he has no ground to complain of alleged errors in the organization of the jury. *State* v. *Price*, 10 Rich., 356; *State* v. *McQuaige*, 5 S. C., 431; *State* v. *Jacob*, 30 *Id.*, 140.

The fact that the omission to place the six names in the hat before the drawing commenced might, as earnestly urged by the counsel for appellant, afford an opportunity to a dishonest or even a partial clerk to favor or prejudice the accused, cannot affect the question. The drawing is conducted in open court, under the supervision of the Circuit Judge, and it must be assumed that he will take all proper care to avoid any partiality either to one side or the other. In this case it is distinctly stated in the "Case" as prepared for argument here, that these names were "accidentally omitted," and this statement we are bound to accept as correct, as we have no other means of knowing officially what occurred in the progress of the trial below.

As to the third ground of appeal, it is sufficient for us to say that we are not aware of any rule of law which fixes any definite time within which a threat must be made before the perpetration of the act to which it is supposed to refer, in order to render testimony as to the making of the threat competent evidence. Of course, where a great or even a considerable length of time has elapsed between the making of a threat and the perpetration of the deed to which it is supposed to point, such length of time is a circumstance to be considered by the jury in determining whether there is any connection between the threat and the deed, but there is no rule of law, and, in the very nature of things, it would be practically impossible to prescribe any rule fixing a limit beyond which a threat would not be competent evidence. We see no error of law, therefore, on the part of the Circuit Judge in permitting the witness McCoy to

testify to a threat made about a month before the homicide was committed.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.