### STATE v. DERRICK.

1. DRAWING AND SERVICE OF JURORS.—Where the *venire facias* is duly issued and served, and the jury commissioners assemble thereunder and draw jurors, who are duly served and attend (except one returned as *non est inventus* and not shown at the trial to be within the State), the indictment found by such grand jury will not be quashed, nor a challenge to the array of petit jurors sustained, because of the failure to have the service upon the jury commissioners entered on the writ, and the failure of the sheriff to make return under oath of the service and manner of service upon the jurors.

2. CONFESSIONS—CORROBORATION.—If the ruling of the Circuit Judge as to a confession being voluntary can be reviewed at all, in this case he was careful not to submit it to the jury for consideration until it was shown to have been free and voluntary, and supported by facts stated in the confession which were corroborated by other testimony.

3. EVIDENCE IN REPLY.—Where a letter signed with deceased's name is introduced in evidence by defendant, the State may prove in reply that the deceased could not write.

4. CIRCUMSTANTIAL EVIDENCE—CONFESSIONS.—Where the testimony is circumstantial, and a confession is in part corroborated by facts disclosed,

there was no error committed by the trial judge in charging the jury that "the evidence is circumstantial and corroborative circumstantial," and that "when confessions are corroborated by the circumstances, the jury should consider them as they consider other testimony."

5. CHARGING JURIES—CONFESSIONS.—The jury were not misled nor the prisoner prejudiced by the charge that "if there be an element in the confession showing that it does not comport with the facts surrounding the confession, you are at liberty, and it is your bounden duty, to give them just as much credence as you believe, and just as you would other testimony."

6. IBID.—OPINION OF JUDGE AS TO FACTS.—The opinion of the trial judge as to the guilt of the prisoner was not indicated to the jury by the charge that "the State does not ask for the blood of any man, but the common mother has a hand over us all; she asks not for revenge, but she asks that the law be complied with, and that security and protection hover over us all."

7. AN EXCEPTION alleging that "the verdict was contrary to the law and the evidence," is too general for consideration.

Before BUCHANAN, J., Abbeville, January, 1895.

Indictment against Walter Derrick for the murder of Sam Robinson.

*Mr. D. H. Magill,* for appellant.

*Mr. M. F. Ansel,* solicitor, contra.

July 5, 1895. The opinion of the court was delivered by

MR. JUSTICE POPE. The defendant was convicted of the crime of murder at the January, 1895, term of the Court of General Sessions for Abbeville County, and, after his honor, Judge Buchanan, as presiding judge, had pronounced the sentence of death upon him, an appeal was taken to this court. The solemn duty now awaits this court to dispose of the various propositions raised by the zealous and able counsel for the unfortunate man at the bar of this court in behalf of the appellant. Without reproducing the text of these grounds of appeal in every instance, we will, *first,* dispose of those relating to the grand jury that found the bill of indictment and to the petit jury that rendered the verdict of guilty.

As soon as the cause was called up, the defendant moved to quash the indictment: *a,* because it does not appear on the writ

of *venire facias* that the sheriff made service of said writ upon the jury commissioners, in obedience to the mandate of said writ; and, *b*, because it does not appear that said jury commissioners were served with said writ.

The "Case" shows that said writ was duly issued under the hand and seal of the clerk of the Circuit Court of Abbeville County, on the 15th day of May, 1894, requiring the sheriff to serve the three jury commissioners, and requiring them to draw and annex to the panel of this writ eighteen good and lawful men, whom the said sheriff was required immediately thereafter to summons, to be and appear at the Court of General Sessions for Abbeville County, on the 4th day of June thereafter, to serve as grand jurors. The "Case" also shows that the three jury commissioners, on the 18th day of May, 1894, in obedience to the writ of *venire facias,* did draw and annex the names of eighteen good and true men as said grand jurors. The "Case" also shows that the sheriff of Abbeville County made his certificate that he did serve a summons upon each one of the eighteen good and true men as grand jurors. And, lastly, the "Case" shows that these eighteen men responded to said summons, and did act as said grand jury at the June term, 1894, and also at the October term, 1894, at which latter term the said grand jury found a true bill on the indictment preferred against the defendant for murder.

Will the failure to have the service upon the jury commissioners entered in the writ, when the record shows that the writ to them was duly issued, and that all three of them acted in obedience to said writ, render the indictment found by a grand jury drawn by such jury commissioners null and void? We do not think so. It is better practice that the sheriff should conform to the letter of the law. But in the case from Edgefield, *State* v. *Toland,* 36 S. C., 522, when the jury commissioners acccepted service on the back of the writ and made out their return, that in obedience to the writ they had drawn the eighteen names as grand jurors, we held that it was sufficient.

But again, the defendant insists that the bill of indictment should be quashed because it does not appear that the sheriff made his return of service upon the grand jurors under oath,

and also that it does not appear from the oath of the deputies of the sheriff how they served the summons upon such grand jurors who were served by them. At best, these are mere iregularities, and cannot have the effect to impeach the legality of the grand jury, who were legally drawn by the jury commissioners, and who actually attended in obedience to the summons they received. The remarks of Mr. Justice McGowan in the case of *State* v. *Smith*, 38 S. C., 271, are very appropriate just here. The learned justice was discussing some exceptions to the grand jury which had found the bill in that case, and said: "It is true, courts are particular in requiring care in the organization of juries, but there is a limit, and we cannot think that the direction in the act as to the number of days notice required to be given, was essential to the validity of the acts done by the jury for nearly a year. There is certainly nothing of substance in the objection, *as the jurors summoned appeared and discharged their duty* [italics ours]. The objections made to the organization of juries are numerous and various, and, therefore, we think the rule is properly stated in the 9th volume, page 3, of the Encyclopedia of Law, as follows: 'Slight irregularities in selecting, drawing and summoning, and in the names of grand jurors, where none of the substantial rights of the accused are affected, do not affect the validity of the panel.' Citing numerous cases."

We will next notice the grounds of appeal relating to the petit jury. It appears from the "Case" that only one juror, J. W. Shaw, did not attend the court as required by law of jurors, and this juror was not served with a summons to attend, for the very good reason, as set out by the sheriff, that he had left the county. The same objections were raised in the challenge to the array of the petit jurors that was raised as the basis for the motion to quash the indictment, viz: no service upon the jury commissioners of the writ of *venire facias*, regularly issued under the seal of the clerk of the court on the 5th day of January, 1895, requiring them to select thirty-six petit jurors, although it appeared that the said jury commissioners, in obedience to said writ, did draw the said thirty-six petit jurors whose names were entered on the panel attached to the

writ, and although it appeared that the sheriff certified that he had served the thirty-six persons so drawn except the juror, J. W. Shaw, who was absent from the State. *There was no showing* made at the trial that J. W. Shaw was in the State. It will be seen that the objections are the same as those we have previously disposed of in connection with the grand jury. Our conclusions there announced will dispose of those grounds of appeal here raised. Accordingly we overrule each of these.

The next group of exceptions are those pertaining to the competency of certain testimony: "5. Because it was error to admit the confession of the defendant, for the reason that the same was induced by fear improperly excited.

6. Because it was error to refuse to strike out the said confession at the close of the testimony." We were struck with the care evinced by the Circuit Judge when the witness, J. S. Boller, was about detailing the confession of the defendant, for he allowed the defendant's counsel to interrogate him fully in regard to the way in which, and by which, the confession was made; and it was only after this witness had positively denied that any hope or fear operated upon the prisoner's mind, or that anything was done or said to extort the confession, that the Circuit Judge admitted the testimony of the confession to be introduced. The law primarily imposes this duty upon the Circuit Judge. It is a heavy responsibility, but it has to be met. In this case, no doubt, the Circuit Judge was in a measure relieved by the number of corroborating circumstances brought to his view. From a careful study of these circum stances, we cannot say that the Circuit Judge erred in admitting the confession originally, or in refusing to strike it from the testimony after all the facts were in evidence. We have been called upon so often to consider this subject, that we feel that we have fully covered the law on this subject in our decisions in *State* v. *Howard*, 35 S. C., 205, and *State* v. *Carson*, 36 *Id.*, 524. In this last case, the separate opinion of Mr. Chief Justice McIver is well worthy a close perusal, suggesting that there may be a difficulty in any review by this court of the decision of the Circuit Judge as to the admissibility of confessions.

Other cases, since the cases cited were decided, fully state the views of this court on this subject.

The seventh exception complains that the solicitor, after he had announced that the State had closed its testimony, was allowed, against the objection of defendant, to introduce the wife of the deceased, Dora Robinson, to prove that the deceased could not write. It seems that the defendant had introduced what purported to be a letter from Sam Robinson, the deceased, addressed to the prisoner, wherein the prisoner was notified that he would "turn him out as sure as he saw his face." The solicitor learned that Sam Robinson could not write, and hence, of course, he was anxious to expose this device. The Circuit Judge allowed the question after a full consideration. He was entirely justified in this course. The object of all investigations in courts of justice is the attainment of truth, to the end that human rights may be protected, and for this purpose the judges are invested, of necessity, with power essential to such results. This exception must be overruled.

We will next consider those grounds which relate to the error of the Circuit Judge in his charge to the jury. The eighth ground of appeal is in these words: "Because his honor erred in charging the jury that in this case the evidence is circumstantial and corroborative circumstantial." No human eye witnessed the shooting of Sam Robinson by the defendant. The testimony relied upon was necessarily circumstantial. There were circumstances in corroboration of this circumstantial testimony. These matters were in the mind of his honor in the use of the language in his charge to the jury, as quoted in the exception. We see no error of law here.

The ninth ground of appeal is in these words: "Because his honor erred in charging the jury that when confessions are corroborated by the circumstances, the jury should consider them as they consider other testimony." When the confession was being considered by the court, it appeared in testimony that the defendant had borrowed a gun on the afternoon of the homicide; not only so, but that while with his gun in his hands he had met some women, to whom he declared his purpose of

taking the life of Sam Robinson. Also, that when he first approached the house of Sam Robinson, some little boys were playing at the window, through which Sam Robinson was, not long afterwards, shot, which caused the defendant to go back to a ditch some 200 yards distant, pulling off shoes and leaving them in the ditch, and that after the dreadful deed was committed, the defendant went back down this same ditch to where he had left his shoes. All these facts, so far as borrowing the gun, talking to women of his purpose, the playing of the little boys at the window, tracks made by a man first with shoes on, afterwards with bare feet, up to the window back and forth to the ditch, were proved by witnesses. The confession was made by the defendant, covering all these several matters. Hence when the Circuit Judge referred to this part of the cause, he used the remarks quoted in the exception. In these matters he did not err. Of course, the jury were bound to consider these distinct statements, which corroborated the confession as made.

The tenth ground of appeal is: "Because the following words of his honor's charge were calculated to mislead the jury: 'If there be an element in the confession showing that they do not comport with the facts surrounding the confession, you, gentlemen, are at liberty, and it is your bounden duty, to give them just as much credence as you believe, and just as you would other testimony.'" We cannot see that these words are calculated to mislead a jury. That they might have been made plainer, may be, but still there is nothing calculated to do any possible harm to the defendant thereby.

As to the eleventh ground of appeal, which is as follows: "Because the following words of his honor's charge indicated to the jury his opinion as to the guilt of the defendant: 'The State does not ask for the blood of any man, but the common mother has a hand over us all; she asks not for revenge, but she asks that the law be complied with, and that security and protection hover over us all.'" We can see no possible harm to the prisoner-defendant in these words of his honor. They are general in their application. If anything, the use of these words indicate the desire of his honor

that the jury will not be misled by any suggestion of revenge, a life for a life, as some express it, but that the jury are called upon to remember that the citizen, who is at the bar charged with crime, is still a citizen of this commonwealth, and, as such, is entitled to all the protection that our laws accord one in such a position.  This ground of appeal is not well taken.

Lastly, it is suggested in the twelfth ground of appeal, "that the verdict was contrary to law and the evidence." This is too general to warrant any consideration at our hands, and must, therefore, be dismissed.

It is the judgment of this court, that the judgment appealed from be affirmed, and that the cause be remitted to the Circuit Court, to the end that a new day be fixed and assigned for the execution of the sentence heretofore imposed upon the defendant.