13547

STATE v. RASOR *ET AL.*

(167 S. E., 396)

*Messrs. O. L. Long, Sullivan & Wilson* and *W. R. Richey,* for appellants,

*Mr. Cole L. Blease,* for appellants,

*Messrs. H. S. Blackwell, Solicitor, Huff & Huff, R. E. Babb* and *C. A. Young,* for respondent,

January 3, 1933.

The opinion of the Court was delivered by MR. CHIEF JUSTICE BLEASE.

The appellants, Henry Rasor, Lathan Crisp, and Eugene Crisp, all white, together with Ernest Hitt, white, and Isaiah ("Coot") Richards, colored, were charged, in the Court of General Sessions of Laurens County with the murder of

W. C. Rasor, father of the appellant Henry Rasor, at the home of the deceased at Cross Hill on the night of September 26th, 1931.

The case was first called for trial at the February, 1932, term of the Court. The motion of the solicitor for a severance, so as to try the appellants, Rasor and the two Crisps, separately from their co-defendants, Hitt and Richards, was granted by the then presiding Judge, Hon. S. W. G. Shipp. Hitt and Richards were witnesses for the prosecution. The jury failed to agree upon a verdict, and a mistrial was declared.

The second trial of the case, before his Honor, Circuit Judge C. C. Featherstone, was had at a special term of the Court, commencing May 2, 1932, and the trial consumed about one week. The result was a conviction of all three of the appellants of murder, with recommendation to the mercy of the Court, and the imposition of a sentence of life imprisonment upon each of them. From that judgment, this appeal comes.

The appellants have presented ten exceptions. None of these make any complaint as to the charge of the trial Judge. It is especially significant that, although more than fifty witnesses testified in the case, none of the exceptions question the correctness of any ruling of the Court as to the admissibility of evidence.

While considering carefully each and every one of the exceptions, for convenience we are able in certain instances to group some of them.

The first, second, third, and fifth exceptions relate to the refusal to grant a continuance of the case beyond the term. A continuance was requested because of the absence from the Court of Mrs. Sue Baggott, a witness for the defense, who, it was shown by the affidavit of a highly reputable physician, could not be present because she was ill at her home in Augusta, Ga. An affidavit on the part of Mrs. Baggott, setting forth the testimony she would give

if present, was presented, and the solicitor, consented to allow her evidence to be introduced in this manner in the trial. Mrs. Baggott was unable to attend the first trial of the case in the preceding February, and the same affidavit was introduced in evidence by the defense at that trial with the consent of the solicitor. No request for a continuance at the February term was made on account of the absence of Mrs. Baggott. The Circuit Judge properly held that, since the witness was not a resident of this State, her attendance upon the Court could not be required. Even if the Judge, at the time of his ruling, felt assured that the witness would be present at a later term, we are unable to hold that there was error in the exercise of the discretion allowed to him under the law in the matter of granting and refusing continuances. In a case such as this, in which there were more than fifty witnesses, some twenty for the prosecution and thirty for the defense, people both old and young, and many who were women, it is exceedingly difficult to have all of them present at any given time. In all probability, if Mrs. Baggott could have attended at a time more convenient to her, some other witness, perhaps equally as important to the defense, may have been absent. In addition, in the instance here, we find that testimony similar to that as given in the affidavit of Mrs. Baggott was related by her mother, Mrs. Alma Leaman, and Miss Margaret Rasor.

Upon receiving information that the special term of Court would be held, about one month prior to the holding, counsel for the appellants requested the official Court stenographer to furnish them with a copy of the testimony taken at the first trial in February, so that they might have use of that record in the second trial. Since he was busily engaged in Court reporting, the stenographer was unable to furnish the transcript. On that account, a continuance was asked to the regular June term following, at which time it appeared the stenographer could furnish the testimony. Counsel for the State also were unable to get a

copy of the former testimony. The trial Judge, in refusing the requested continuance for the reason presented, said that the stenographer had his notes in Court, and upon any occasion that counsel wished to refer to them, he would allow plenty of time for the stenographer to look up anything desired. The Court stenographer was presented as a witness, and read to the jury all such testimony taken at the former trial that was requested of him by the defense. We have not been cited to any authority to the effect that a continuance should be granted because of the failure of a party to have in hand the testimony taken at a former trial of his case. Certainly, in the circumstances here, there was no abuse of the discretion given to the presiding Judge.

The third ground, on which the motion for a continuance was based, was due, as counsel stated in making the motion, to the conditions which then and had formerly existed. In substance, it was stated that the trial held in February had probably created more interest than any case ever tried in Laurens County; the courthouse was packed; public opinion was inflamed; the jury considered the case a long time and finally disagreed; the standing of the jury at that trial was divulged and generally made known; the only man who had favored an acquittal was threatened with ostracism in his business and social relations; and that the situation created made it impossible for the defendants to get a fair trial even in May when the Court was held. But, admitted zealous counsel, "That spirit is rapidly subsiding. A few weeks ago it was rather intense, today it is a great deal less."

Counsel were allowed to read to the Court, as shown by the transcript of record, "certain excerpts from a newspaper," but those are not reproduced. It was stated also by one of the attorneys that he had approached a number of citizens of the Town of Laurens and "outlined the facts that I have outlined to you," and "they recalled the fact of this juror having been criticized, but they wouldn't make an affidavit."

As reasons for refusal to grant the continuance motion on that particular ground, the presiding Judge stated that there had been no motion for a change of venue, which the defendants had the right to make; that the mistrial in February was some evidence in itself that the defendants could get a fair trial, and that he could not assume on the bare statements made that public sentiment was such that a fair trial could not be had.

On reconsideration of this matter in the motion for a new trial, the Circuit Judge again called attention to the fact that there had been no motion for a change of venue. He also said: "I may say further that I didn't see any exhibition of inflamed public sentiment during the trial. The crowd was perfectly orderly. I saw no signs that indicated that the public sentiment was in such condition as to keep the defendants from getting a fair trial."

We agree with counsel for the appellants, in the legal position they seem to take, that a defendant in a criminal case is not precluded from asking for a continuance of his case, when public feeling is so aroused against him as to deny him a fair and impartial trial, by his failure to move first for a change of venue. The trial Court may very properly, and should, grant a continuance when it appears that conditions are such as to deprive either the State or the defendant from obtaining the fair and impartial trial to which our Courts should always look. In deciding this very important matter, one not only of great moment to the appellants here, but to the administration of justice in our State as well, we are impelled to sustain the conclusion reached by the presiding Judge for certain reasons, briefly stated: The homicide, alleged to have been committed by the appellants occurred in September, 1931. It was more than four months thereafter before they were first put on trial. They went to trial at that time without any suggestion that a change of venue should be had, or a continuance of

the case granted because the situation was such that a fair trial would not be given them. That trial resulted in a mistrial. It was two months more before the case was called for trial the second time. Perhaps, as suggested by counsel, there was adverse criticism on the part of some of the citizens of the Town of Laurens as to the conduct of one of the jurors, who favored an acquittal of the defendants. Likely, too, there was adverse feeling on the part of friends of the defendants as to the jurors who were reported to have favored their conviction. In every case of great importance, especially one in which a man is charged with the brutal murder of his own father, there is sure to arise conflicting views and opinions on the part of people. A case of that nature, tried anywhere, is likely to create great public interest, and our Courts, open to the public under the provision of the Constitution, which provision is intended to help protect people charged with crime, are usually attended by large crowds. Jurors, however honest they may be in their endeavors to perform their duty, are quite likely to be unpleasantly criticized by some of the public, often, too, by those who know but little of the true facts of the cause as disclosed in the trial. Especially is it to be expected that partisans of the defendants, and those who seek the conviction of the defendants, will speak freely and openly harsh things of the actions of a juror who has decided, or endeavored to decide, the case against the interest and wish of the critic.

The matters presented to the Court as reasons for a continuance on the ground of adverse public sentiment were only statements in the nature of opinions and conclusions of the counsel. They were not supported by the usual proof given and required for the granting of such motions. See *State v. Francis,* 152 S. C., 17, 149 S. E., 348, 70 A. L. R., 1133. Zealous attorneys often become imbued with the feeling that their clients are being unjustly treated, and, to the

credit of the legal profession, it may be said that a feeling of this kind tends to make the lawyer who has it more diligent in his representation of his client.

While counsel stated that "the citizens," who had given him information, had refused to make affidavits, verifying the information obtained, there was no request that these citizens, who were unnamed, should be brought before the Court and required to testify as to the information they had furnished. The Court had the power to summon "these citizens" before it for the purpose of proper examination, and, no doubt, if their names had been given, and a request for their examination in open Court made, the presiding Judge would have granted it.

To sustain the ably argued position that there was error in not continuing the case on account of the hostile sentiment existing at the time of the trial against appellants, two cases, decided by this Court, are mainly relied upon. We are of the opinion that neither of these is applicable. In the first, *State v. Davis*, 138 S. C., 532, 137 S. E., 139, 140, this Court held there was reversible error in refusing the motion of the defendant for a change of venue on the showing made that he could not obtain a fair and impartial trial in Fairfield County, where the alleged crime was committed. The attorney for the defendant in that case did not depend upon his bare statement of opinions and conclusions. He presented an affidavit to the Court setting forth facts, which, if true, showed strongly that the change of venue should have been allowed. Those facts are set forth in the opinion of Mr. Justice Stabler in the case, and it is not necessary to restate them here. The State did not controvert them. It depended alone upon statements contained in affidavits submitted in opposition to the motion by six citizens that "in their judgment they thought that the defendant could obtain a fair and impartial trial in Fairfield County," merely conclusions and opinions.

The other case depended upon is *State v. Weldon,* 91 S. C., 29, 74 S. E., 43, 45, 39 L. R. A. (N. S.), 667, Ann. Cas., 1913-E, 801. The appeal there was from the refusal of the Circuit Court to grant a new trial, on the ground that the defendants had been deprived of their constitutional right to a fair and impartial trial. This Court, speaking through Mr. Justice Woods, held, under the showing made by the affidavits of highly respectable witnesses, that: "The conditions under which counsel conducted the defendants' cause, and under which their witnesses were examined, substantially interfered with the due exercise of the right granted by Section 49 of the Criminal Code 1902 [Section 996, Code of 1932], 'that the accused shall, at his trial, be allowed to be heard by counsel, may defend himself, and shall have a right to produce witnesses and proofs in his favor, and to meet the witnesses produced against him face to face.'"

It was further said: "The jury was not so safeguarded against extraneous influences as to allow the defendants the right of trial by an impartial jury, guaranteed by Section 18, Art. 1, of the Constitution; and the defendants were, by the compulsion of the fear of death by lynching, deprived of the right to have three days to prepare for their trial, conferred on them by Section 40 of the Criminal Code [Section 978, Code of 1932]."

No showing in any way comparable with that in either the *Davis* or *Weldon cases* was made in this case. In the absence of proper proof to upset the rulings of the presiding Judge, we must sustain his action. He was on the scene and in the atmosphere, and it is conceded by counsel for the appellants that the trial was orderly conducted in every respect. Indeed, in the argument of counsel for the appellants, they refer in very complimentary language to the manner in which the distinguished Judge, as a disciplinarian, conducted the trial of the case.

The fifth exception, under our rules, is entirely too general to be considered. It charges error on the part of the presiding Judge "in refusing defendants' motion for a new trial based on the entire record in the case and the minutes of the Court, and on his refusal to grant a continuance of the case for the reasons stated in the motion when made." Waiving the objection to the form of the exception, we may say, however, that what we have heretofore said has disposed of all questions raised in all of the exceptions as to the refusal to grant a continuance.

The fourth, sixth, and ninth exceptions have reference to the impaneling of the jury. In the fourth, complaint is made that there was prejudicial error on the part of the presiding Judge "in refusing the defendants' motion to quash the jury venire on the ground that the jury was drawn from a jury box which contained names of persons over sixty-five years old, disqualified by the Constitution and statutes of this State from jury duty, on the ground that the regular panel of jurors contained one disqualified juror who was over age and that the jury panel did not consist of thirty-six qualified jurors as is prescribed by the Constitution and Statutes of South Carolina."

The sixth exception is a repetition mainly of the complaint made in the fourth. Therein it is charged the Court erred in not granting a new trial on the same mentioned ground.

The facts appearing in the record as the basis of these particular exceptions are as follows: Of the thirty-six members of the venire, the trial Judge excused one for the reason that he was sixty-nine years old, and two others on account of illness, leaving thirty-three of the venire present as regular jurors for the term. The positions were taken by counsel for the defendants that their clients were entitled to have thirty-six qualified jurors, as provided by the Constitution, from which to draw the trial jury; that the venire should have been drawn from a box filled with one-third of

the qualified electors of the county between the ages of twenty-one and sixty-five; that the venire had not been drawn according to law; and that, if a special venire was drawn, it would be drawn from the "five mile box," where the sentiment against their clients was the strongest.

In response to the motion to quash the venire, the presiding Judge conceded that one of the veniremen was over sixty-five years of age, and had been excused by the Court on that account. He held, however, that he must assume that the jury had been drawn according to law, nothing appearing to the contrary. He further stated that he would endeavor to see that no disqualified juror was placed on the panel. He offered to have the jury commissioners fill the panel so as to give a full number of thirty-six veniremen. Upon the counsel for the defendants asking the question if the list would be filled "out of the big box" and not out of the five-mile box, the Court stated that he would give them jurors out of any box they desired, although he was not required so to do. He positively said to counsel: "If you state on the record that you require them to come out of the big box I will give them to you." Counsel for the defendants replied: "In view of our motion we are not going to make any request," as they thought such action would not then be legal.

To sustain the exceptions under consideration, counsel for the appellants have quoted extensively from the opinion in the recent case of *State v. Rector,* 158 S. C., 212, 155 S. E., 385. So far as that decision is applicable here, it is only necessary to say that therein it was expressly held that one charged in the Court of General Sessions with crime has the right to be tried by twelve men, fully qualified under the Constitution of this State to act as jurors.

The Constitution (Section 22, Art. 5), provides that: "The petit jury of the Circuit Courts shall consist of twelve men, all of whom must agree to a verdict in order to render the same." In the same section, it is further provided that:

"Each juror must be a qualified elector under the provision of this Constitution, between the ages of twenty-one and sixty-five years and of good moral character."

The *Rector case* does not support the position taken by the appellants. There is nothing before us to show that any member of the petit jury, who tried the defendants, failed to possess any qualification for a juror as laid down in the Constitution. In the absence of any showing to the contrary, this Court must assume that the trial jury was legally and properly constituted, and that each and every individual member thereof was qualified to act as a juror as prescribed in the Constitution.

This Court did endeavor in its decision in the *Rector case* to impress upon jury commissioners .the importance and propriety of following the statutory provisions as to the drawing and summoning of jurors. Those provisions have been enacted for the purpose of securing in our Courts the jurors required by the Constitution. But we did not hold in the *Rector case* that the placing in the jury box of the name of one or even more persons disqualified to act as jurors would be sufficient ground upon which to quash the venire. The matter of filling the jury box, according to the provisions of the statutes, was considered much more fully in the case of *State v. Wells,* 162 S. C., 509, 161 S. E., 177, 183, than it was considered in the *Rector case.* In the *Wells case* we said: "Our Court has been liberal in holding that the provisions as to the drawing and summoning of jurors are usually directory only and not mandatory. *Hutto v. Railway Co.,* 75 S. C., 295, 55 S. E., 445; *Rhodes v. Railway,* 68 S. C., 494, 47 S. E., 689; *State v. Smalls,* 73 S. C., 516, 53 S. E., 976; *State v. Smith,* 77 S. C., 248, 57 S. E., 868. Irregularities in the listing, drawing, and summoning of jurors may be often waived, and, even if not waived, are not in themselves acts so prejudicial as to require the quashing of a venire or to warrant the Court in setting aside a judgment based upon a finding or verdict of a jury irregularly drawn."

We know of no decision by this Court that directly holds, or even so holds by implication, that a jury venire should be quashed because of the disqualification of one of the persons included therein to serve in the Courts as a juror. On the contrary, we have the clear opinion that the holdings have been directly otherwise. See the cases referred to in the quotation from *State v. Wells, supra,* and, also *State v. Jackson,* 32 S. C., 27, 10 S. E., 769, and *State v. Merriman,* 34 S. C., 16, 12 S. E., 619.

In addition, attention may be called to the fact that Section 616 of the Code declares that: "No more than thirty-six persons, to serve as petit jurors, shall be drawn and summoned to attend at one and the same time at any Court, unless the Court shall so order." In *State v. Jackson, supra,* it was held that, under these provisions of the Code, it was not necessary that the whole number of thirty-six jurors should be present at the commencement of the trial. See, also, *State v. Campbell,* 35 S. C., 28, 14 S. E., 292; *State v. Halback,* 40 S. C., 298, 18 S. E., 919, and *State v. Derrick,* 44 S. C., 344, 22 S. E., 337.

After the trial jury had been drawn and sworn, they were permitted to retire to their room for a little rest. While absent, according to the transcript of record, the State's counsel informed the Court that he had received information that, although juror C. W. Taylor had been sworn on his *voir dire,* and had stated on oath that he was not related to any of the parties, he was actually related to one of the defendants. In the remarks of the presiding Judge on the motion for a new trial, he said that the matter of the possible relationship of Mr. Taylor "was brought to the attention of the Court and the Court brought it to the attention of counsel that possibly Mr. Taylor had made a mistake in saying on his *voir dire* that he was not connected by marriage or otherwise." The Judge gave as his reason for re-examination of Mr. Taylor his desire to be sure that no member of the jury was disqualified in any way for service

thereon. Regardless of the contradictory statements as to who gave the Court the information of Mr. Taylor's possible relationship, it appears that at the instance of the Court Mr. Taylor was called from the jury room into the main courtroom, and there he was again asked as to any relationship on his part "to any of the parties." Upon being assured that there was no relationship, Mr. Taylor was allowed to remain as a member of the jury. It does not appear that counsel for the defendants at the time interposed any objection whatever to the conduct of the Court in questioning Mr. Taylor the second time on the matter of his relationship to any party interested in the cause. Objection on the part of the appellants came after the verdict adverse to them had been rendered, on the motion for a new trial, although they had the opportunity to interpose objection earlier. This Court might properly, therefore, hold that the objection to the procedure of the trial Judge came too late. But, waiving that, we are absolutely unable to see wherein the appellants, by the conduct of the Judge now complained of, suffered any prejudicial error.

In the argument for appellants, it is suggested that, when Mr. Taylor was brought before the Court the second time for inquiry as to his possible relationship, all the eyes of the crowded courtroom were focused upon him; that he realized this, and consequently became impressed with the idea that he was under suspicion, and thereby he naturally became timid as to taking any position on the jury favorable to the defendants. This argument, however, is not supported by anything appearing in the record, and no suggestion of the kind was made to the trial Judge. We feel again that counsel in their zeal have too heavily felt the responsibilities resting upon them. It was the duty of the trial Judge to assure himself that each and every member of the jury was unbiased, fair, and impartial, and that no one of them was disqualified as a juror. If the presiding Judge had not taken the course he pursued, and had

it afterwards been ascertained that Mr. Taylor was related, it is altogether likely that the Court's failure to make further inquiry as to Mr. Taylor's relationship would have been urged as a ground for a new trial. It was no reflection upon Mr. Taylor to ask him to be sure that he was not related to any interested party, since it is well known that many persons have relatives, particularly relatives by affinity, whom they do not know. An instance of this lack of information is found in the case of *Robertson v. Telegraph Company*, 90 S. C., 425, 73 S. E., 786, where one of the jurors participated in the trial of the case entirely unaware of the fact that he was a great uncle of the plaintiff. Because of that relationship, unknown by the juror and the parties to the cause until after the rendition of the verdict, and when the juror on his *voir dire* had stated that he was not related, Mr. Chief Justice Gary, for this Court, said a new trial should be had, and the result of the appeal was a reversal of the refusal of the lower Court to set aside the verdict.

For the reasons indicated, we are unable to sustain any of the exceptions relating to the jury.

The remaining exceptions refer to conduct on the part of counsel for the State, which the appellants urge was improper and resulted in serious prejudice to their right to a fair and impartial trial. The seventh and tenth of these exceptions complain of the acts of Mr. Phil D. Huff, one of the attorneys assisting the solicitor in the prosecution.

We take up first the matters referred to in the seventh exception. Jake Rasor, a son of the deceased and a brother of the defendant, Henry Rasor, was attacked and assaulted as he was entering the home of his father, where he, too, resided, some time after his father had been killed. As a witness for the State, Rasor testified that he had fired at his assailant, and, tending to identify in some respects the appellant, Lathan Crisp, as the assailant, he testified concerning the length of the leg of that appellant, said to have been

notable for its shortness. There was some testimony, also, tending to establish that Lathan Crisp was shot on the night of the alleged homicide of W. C. Rasor. While Lathan Crisp was on the witness stand, testifying in his own behalf, his counsel requested that the jury be allowed to personally examine his body, and the Court granted the request. Crisp was allowed to go into the jury room with the jurors and the counsel for the State and the defense, that the requested examination might be made. The trial Judge instructed that the defendant be permitted to undress, but that no one was to speak to him while in the jury room for the purpose of the personal examination. During this examination, Mr. Huff "took his position beside the defendant and attempted to compare the length of his leg with that of the defendant, Lathan Crisp." In the jury room, counsel for the defense objected to the conduct of Mr. Huff. When the jurors returned to the main courtroom, counsel for the defense entered objection to the conduct in the jury room on the part of Mr. Huff, and had the Court to note their exception thereto. No request for any ruling on the part of the Court was then made, and the Court made no ruling thereabout. Counsel did not ask that a mistrial be ordered; neither did they suggest that the conduct of Mr. Huff be reprimanded by the Court. One of the grounds on which the motion for a new trial was based grew out of this incident. In passing upon that ground, reviewing the facts of the occurrence, the trial Judge said: "All that happened was that one member of counsel for the State stood up by him. The record does not show that he said anything. He stood up by him in order that the jury could make a comparison between his leg from the knee down and defendant's leg from the knee down."

In the recent case of *State v. King,* 158 S. C., 251, 155 S. E., 409, 421, this Court took occasion to venture suggestions as to the conduct of private counsel engaged in assisting the solicitor in the prosecution of criminal cases. It was there said: "We especially desire to sound a warning

to lawyers who are called upon to assist our solicitors in criminal prosecutions. There is, undoubtedly, a tendency on the part of these attorneys, in their zeal in their capacity as privately paid attorneys, to go too far in conducting cases, especially in the cross-examination of a defendant and his witnesses."

We take occasion to repeat that warning. Attorneys called upon to assist solicitors in important criminal cases are usually those who are recognized as able lawyers in the conduct of defenses in such cases. Their habits and conduct in defending lead them often to say and do things in prosecuting which they should not say and do. There is considerable difference in conducting a defense than that of conducting a prosecution. The rights of neither the State nor the defendant in a criminal case may be trespassed upon by counsel for the defense, but the defendants' rights may be seriously prejudiced by counsel for the State.

While not placing our stamp of approval upon the conduct of the assistant counsel for the State, we cannot reach the conclusion that such conduct was so prejudicial to the appellants as to occasion a reversal of the judgment. First, it was the duty of counsel for the appellants, when that conduct was known to them and not to the Judge, to do more than simply have their objection noted. If they really felt that prejudicial error had occurred, they should have moved for a mistrial, or, at least, they should have asked the Court to reprimand Mr. Huff and to instruct the jury accordingly.

Giving the appellants the full benefit of the position they have taken, however, we waive their failure to proceed properly and consider the facts upon which this exception is based. If the incident had occurred in open Court, where the presiding Judge was present, we think there would have been no error at all. One of the incidental issues in the cause, perhaps, one of some importance, was as to the length of the legs of the appellant Lathan Crisp. He offered, as he had the right to do, to allow the jury to see his whole per-

son. If Mr. Huff, in open Court, had been cross-examining him, or if other counsel for the State had been cross-examining him, there would have been no impropriety in having the defendant to compare the length of his legs with those of Mr. Huff. The case of *State v. Fleming*, 148 S. C., 64, 145 S. E., 632, depended upon by the appellants to sustain this exception, is not in point. In that case, there was a reversal because the solicitor, in a prosecution for murder, had the defendant and one of the jurors to stand up in the courtroom for the purpose of comparing size and weight. This Court held that it was improper to make a juror "an exhibit and part of evidence." There is not the slightest intimation in the record here that any juror was made "an exhibit and part of evidence" in any way.

In his argument to the jury, Mr. Huff, in referring to the conduct of Jake Rasor, a witness for the State, who was assaulted on the night of his father's murder, "stated to the jury in substance that you could not be surprised that Jake was there prosecuting his brother in trying to see that the murderers of his father had been brought to justice for the reason that his brother C. C. Rasor, had been killed only a short time prior thereto and that a jury of Laurens County had set the party who had killed his brother free, and that the murder of his brother had not been avenged at the hands of the Courts of Laurens County." The language used is made the basis of the tenth exception; it being charged therein that the trial Judge erred in permitting and allowing Mr. Huff to use that language in his address.

It is conceded in the transcript of record and by the appellants, in the brief of their counsel, that there was no objection to the line of argument used by Mr. Huff, and no request that the Court interposed to prevent the argument now alleged to have been unfair and seriously prejudicial. Many of our cases, including that of *Bunch v. Railway Company*, 91 S. C., 139, 74 S. E., 363, hold that the failure to call the attention of the Court to objectionable

remarks made by counsel in argument, and the failure to request of the Court to suppress such argument, is a waiver of the right to object afterwards. This is a salutary rule, and should be enforced. It is not fair to the trial Judge, nor opposing counsel, to the adverse party, or to the administration of justice, for counsel to sit quietly by and permit remarks of opposing counsel, thought to be unfair and improper, to go unrebuked and without interposing objection thereto at the time, and later, on motion for new trial or appeal, to raise objection. It is another instance of counsel passing over what appears to be a vice in the trial, reserving it for future benefit. We may add that counsel for appellants are mistaken when they say there was no testimony adduced in the trial as to the previous killing of C. C. Rasor, a son of the deceased, which occurred in the Town of Cross Hill. At least, in one place in the record, we find there was a reference to the killing of C. C. Rasor. Miss Margaret Rasor, a daughter of the defendant, Henry Rasor, on her cross-examination, gave some testimony which incidentally referred to that killing.

In his argument, the solicitor, Mr. Blackwell, made some reference "to the arrest of some boy in North Carolina." There was objection to the argument on the part of counsel for the defense. The stenographer was not in the courtroom at the time, and the exact language of the solicitor complained of was not taken down. On request for a ruling, the presiding Judge held that the argument was not improper, since the solicitor had the right to use what he was saying for the purpose of illustration. On the motion for a new trial, the presiding Judge said the remarks of the solicitor, which had been objected to, had "reference to a recent happening in Greenville by way of illustration." Further, he said: "As I understand it, he said that the man there who was implicated in the killing was a graduate of Furman University, a former student at the University. Ever since I have been practicing law it has been the custom to use these matters by way of illustration."

The argument used by the solicitor is made the ground of the eighth exception.

It is regrettable, perhaps, that the exact language of the solicitor is not, and could not be, reproduced in the record. On the showing made, we assume, of course, and we could not do otherwise, that the trial Judge was correct that the statement of the solicitor was something to illustrate some point he was making, and that the argument advanced was not unfair. Proper illustrations in an argument may be made, and there is nothing before us to show that the illustration, complained of, did not comply with the rule as to a fair and proper argument.

In the very strong briefs presented for the appellants, it is urged with considerable force that, while no one of the exceptions, taken separately, may be sufficient to warrant the reversal of the judgment adverse to the appellants, this Court should on consideration of the entire record and all the exceptions, grant a new trial, for the reason that the appellants did not have the fair and impartial trial guaranteed to them by the Constitution of the State. In this connection, it is especially urged that the calling of the special term of the Court for the trial of the case, when the regular term would have convened only about one month later, should be taken into consideration. The special term of Court was held under the provisions of the law. The appellants do not even question the legality of the term. In counties the size of Laurens, when the trial of one case consumes around a week, it often becomes necessary to hold special terms. The fact that the regular June term was called off, as pointed out by appellants' counsel, was due, as they concede, to the fact that the county did not have on hand the funds necessary to pay the expenses of the Court. While, perhaps, it is not our duty to go into all these general matters, we may say that we have examined carefully the entire record in the case, and we are unable to find any particular thing in the conduct of the trial, or its conduct as a whole,

242

which would require, or demand, this Court to reverse the judgment of the lower Court. The evidence presented by the prosecution, if believed, was entirely sufficient to warrant the jury in finding the appellants guilty. There is nothing to show, and, in fact, no claim is made, that any member of the jury was in any way prejudiced against the rights of the defendants, or any of them. Under our system of jurisprudence, the facts of a case like this are left to a jury of the country. That jury has spoken, and, no legal error appearing, it is the duty of this Court to uphold the verdict.

The judgment of this Court is that all the exceptions be overruled, and that the judgment of the Court of General Sessions of Laurens County be, and the same is hereby, affirmed.

MESSRS. JUSTICES CARTER and BONHAM and CIRCUIT JUDGES C. J. RAMAGE and G. DEWEY OXNER, ACTING ASSOCIATE JUSTICES, concur.